## Aaron Fisher et al. v. Isabelle F. Thirkell.

*Excavations under public streets.* Excavations, properly and safely constructed under the public streets in cities, for the convenience of the owners of premises adjoining, are not unlawful; and they are not liable to be treated as nuisances if kept in repair, and the use of the street is not interrupted for an unreasonable length of time.

*Street obstructions : Nuisances : Who liable.* A party will not be liable for an injury occasioned by a nuisance, on the ground of his possession of the premises where the nuisance is shown to exist, unless his possession be such as to give him the legal control of the premises.

The owner of premises in possession of a tenant will not be liable for an injury occasioned by the premises becoming, subsequently to the leasing, out of repair, in a case where the obligation to repair is upon the tenant and not upon the landlord.

*Possession : Charge of Court.* Where the liability of a defendant depends upon possession, and there is no evidence of any such possession as will justify a recovery, it is error for the Court to leave the question of possession to the jury.

21 MICH.—A.

FISHER v. THIRKELL.

*Assignment of errors : Joint or several.* In an action of tort, where several defend-
ants unite in bringing a writ of error, and assign errors jointly, the assign-
ment will be considered joint and several, or joint or several, as the nature of
the errors assigned, and the interest of the respective parties require.

*Heard April 20.   Decided July 7.*

Error to Wayne Circuit.

This was an action on the case brought in the Circuit
Court for the County of Wayne by Isabelle F. Thirkell
against Aaron Fisher, Elam Fisher, John H. Griffith, and
William F. Kier, for an injury to the plaintiff occasioned
by an opening in the sidewalk in front of premises in the
City of Detroit alleged to be owned by the defendants,
Aaron and Elam Fisher, and to be in the occupancy of
the defendants, Griffith and Kier.   The questions to be
reviewed arise upon the charge of the Circuit Judge as to
the liability of the several defendants.   At the request of
the plaintiff the Court charged the jury :

1.  If the jury believe, from the evidence, that the
defendant, Griffith, was in the use and occupancy of the
premises in question, in whole or in part, at the time of,
and some days before the injury occurred, taking an inven-
tory or otherwise using the same for his own benefit, and
that the wood was put into the vault for the use of the
premises by his direction or authority, in whole or in part,
in such use of his said premises said Griffith is liable in
this case.

2.  If the jury believe, from the evidence, that the
Fishers constructed the building, scuttle, and improvements,
and that from their construction several years ago down to
the time when the injury occurred, they continued to be
and were the owners of such scuttle and improvements,
they are liable in this action, although they may have been
only lessees of the ground on which such scuttle and
improvements were situated, and may have sub-leased the

same to other parties; that they were bound to keep the scuttle in good and safe condition while they thus owned the building and improvements, and it makes no difference that they may not have known that such scuttle was not in good and safe condition at the time.

To this charge the defendants excepted.

The defendants requested the Court to charge:

1. That the mere parol bargain between Mrs. Hill and Griffith for the sale of the stock of goods, and the transfer of the lease thereof, did not make a valid binding contract until there was either a part payment for said goods and lease or a written contract of sale between the parties thereto, or a delivery of said goods or a portion thereof.

2. That there is no evidence tending to prove that, previous to the time when the injury happened, there had been either such part payment or written contract or such delivery.

3. That even if, under the instructions of the Court, the jury should find that Griffith had actually gone into possession, yet he would not be liable in this action for negligence unless he knew of a defect in the scuttle, or had been in possession such a period of time that his want of knowledge would be negligence.

4. That it was not the duty of the Messrs. Fisher, as owners of the building in question, to keep the same in repair while it was occupied by tenants, unless there was an agreement made with the tenants that they (the Fishers) should make the repairs.

5. In the absence of any such agreement the defendants Fisher are not liable in this action for injuries to the plaintiff caused by want of repair of the scuttle, which was broken or put out of order during the possession of tenants.

6. That there is no evidence tending to show that the

scuttle was out of repair when the premises were leased by defendants Fisher, or that the defendants Fisher have since been in the actual occupation of said premises, and for this reason the defendants Fisher cannot be held liable in this action.

7. That the Fishers had a perfect right in erecting their store to excavate under the sidewalk if they put the same in a perfectly secure and unobstructed condition, and if the accident to the plaintiff occurred by reason of the negligence of the Fishers' tenants in permitting the scuttle to get out of repair, and not by reason of any original defect in the manner of making the same, then the Fishers are not liable in this action.

The Circuit Judge charged as requested in the first request made by defendants' counsel, but refused to charge as requested in the remaining requests. To which the defendants excepted.

The jury rendered a verdict for the plaintiff against the said defendants, Aaron Fisher, Elam Fisher and John H. Griffith, who bring the judgment entered thereon into this Court, by writ of error.

*C. I. Walker*, for plaintiffs in error.

I. There is no evidence tending to show that Griffith was in possession at the time of the accident to plaintiff, and therefore the Court erred in giving the charge to the jury in accordance with the first request made by plaintiff's counsel.

This charge was also erroneous, because it assumes that there was evidence tending to show that the wood was put in by the direction of Griffith.

There is not the slightest evidence in the case tending to show that the defendant, Griffith, gave any direction or

authority to have the wood put in the vault. On the contrary, the proof is entirely clear that neither Griffith nor Kier ordered the wood.

By the charge of the Court first given, the jury were permitted to find, as a fact, that Griffith directed or authorized the removal of the scuttle and its careless replacing, and the effect of the charge could not have been otherwise than prejudicial to the defendant, Griffith. If the evidence tended to show the facts to be as indicated by the first clause of the charge under consideration, still the mere use and occupancy of the premises by Griffith while "taking an inventory," etc., would not render him liable, unless he also authorized or directed the opening of the scuttle so as to render it dangerous.

This charge tended also to mislead the jury by leading them to the conclusion that Griffith's presence in the store with the Hills, for the purpose of assisting in taking the inventory, was such use and occupation as would render him liable for a continuance of the nuisance.

II. The Court erred in refusing to charge as requested by defendants' counsel in his third request, viz: that to make the defendant, Griffith, liable, he must have had knowledge of the defect, or have been in possession such a period of time that his want of knowledge would be negligence.

At common law, a party injured by a nuisance could not maintain his action against the alienee of the land for the continuance of a nuisance, but the injured party must sue out his writ, "*quod permittat prosternere*," to abate the nuisance complained of. This was changed by statute of *13 Edward I. C. 24; 3 Black. Com., p. 221.* After the passage of said statute, the action could be brought against both the party creating the nuisance, and the party

who, upon the alienation of the premises, continued the nuisance.—*Ib.*

But we submit that there could be no *continuance* of the nuisance by the alienee, until he knew of the nuisance, or would have known of it by the use of ordinary care. It would be carrying the doctrine of constructive negligence to an unreasonable length, to hold that an alienee of · premises or tenant for years, upon receiving a conveyance or a lease thereof, becomes *co instanti* liable for injuries sustained immediately after such change of title or possession, which injuries were caused by the existence of a nuisance then on the premises.

There is no necessity for any such stringent rule, since the liability of the party who created the nuisance and transferred the premises with it therein is indisputable.— *Waggoner v. Jermaine, 3 Denio, 306.* The following authorities expressly hold that a tenant for· years, or an alienee of land, is not liable for the continuance of a nuisance existing at the time of the transfer to him, until he has been requested to remove it: *Penruddock's Case, 5 Coke, 100 ; McDonough v. Gilman, 3 Allen, 264; Nichols v. Boston, 98 Mass., 39 ; Dodge v. Stacy, 39 Vt., 559 ; Pittsburg v. Moore, 44 Me., 154; Johnson v. Lewis, 13 Conn., 303 ; Pierson v. Glean, 2 N. J., 37 ; Woodman v. Tufts, 9 N. H., 88.*

In the case of *Caldwell v. Gale,, 11 Mich.,* 77, this Court hesitated about applying the above rule as to notice, but did not decide the question, inasmuch as it was there held, that if notice was requisite, a sufficient one had been given.

III. The charge of the Court, and the refusals to charge, as to the liability of the Fishers, are, in effect, that as builders of the store and owners of the paving and area in front thereof, the Fishers were bound at their peril to

keep the scuttle in good order, and their liability is not affected by the fact that they leased the store with the scuttle in a perfectly secure condition, nor by the fact that the injury to the plaintiff was caused by the negligence of Fishers' tenants, and without the Fishers' knowledge, while the premises were in the possession of such tenants.

This charge, and refusals to charge, were, we insist, erroneous.

1. Landlords who have leased their premises in good condition, and who have not covenanted to repair, are not liable for damages caused by a nuisance created on the premises during the existence of the tenancy.

The decisions on this point are numerous, and the following are the principal cases in which the question has arisen: *Payne v. Rogers, 2 H. Black., 350; Leslie v. Pounds, 4 Taunt., 649; Cheetham v. Hampson, 4 T. R., 318; Bishop v. Bedford Charity, 1 Ellis & Ellis, 697; Chauntler v. Robinson, 4 Ex., 163; Regina v. Watts, 1 Salk., 357; Rich v. Basterfield, 4 M. G. & S., 783; Russell v. Shenton, 3 A. & E. (N. S.) 449; Offerman v. Starr, 2 Penn. S., 394.*

2. In this case, the Fishers, having caused the area to be made underneath the sidewalk, and the scuttle leading to the area to be put in the sidewalk, in a perfectly secure condition, for the accommodation of the adjacent stores, and having leased the premises while in such condition, are not liable for injuries to the plaintiff, caused by a want of repair of the scuttle during the tenancy. It was the tenant's duty to repair, and he alone is liable.

The following authorities are cited in support of this proposition: *Bears v. Ambler, 9 Penn. S. 193; City of Lowell v. Spaulding, 4 Cush., 277; Clark v. Fry, 8 Ohio, S., 358.*

In opposition to the whole current of authorities above cited, and in direct conflict with the cases in Massachu-

setts, Pennsylvania, and Ohio, there are some cases in the State of New York, which hold, that where the owner makes an area under the sidewalk, he is bound, at his peril, to keep the street safe at all times, and if an accident happens to any one passing over it, without fault on the part of the injured party, the owner is liable, irrespective of any negligence on his part, or of the fact that others were occupying the building.—*Congreve v. Smith, 18 N. Y., 79 ; Congreve v. Morgan, 18 N. Y., 84.*

The ground on which these decisions rest, is that the act of making the area is "wrongful," and in the opinion in one case, mention is made of the fact, that "no license from the city for the area was proved." If by the ordinances of the city authorities of New York such license is required, the case differs in that respect from the one under consideration, as in Detroit no such ordinance exists ; but, without such requirement, the right of a lot owner to make such excavation is clear.

The public have only an easement in the land over which the street passes. The proprietor of lots abutting on the street owns to the center of the street, and has the right to make any use of the land to which it can be applied, subject to the public easement.—*Washburn on Easements, p. 196.* He may sink a drain or water-course below the surface.—*Perley v. Chandler, 6 Mass., 454 ; Woodbury v. Forks Township, 28 Penn., § 355.* He may recover in trespass against one who uses the street for any other purpose than the public easement.—*Lade v. Shepherd, 2 Strange, 1,004.* He may recover against one who cuts the herbage.—*Adams v. Emerson, 6. Pick., 56 ; Robins v. Borman, 1 Pick. 122.*

In *Goodtitle v. Alker, 1 Burr., 133,* it is said that "the owner of the soil has a right to all above and under ground except only the right of passage for the king and

his people." And the case of *Clark v. Fry, 8 Ohio, p. 358,* before cited, expressly holds that an excavation in the sidewalk for an area is not unlawful, if properly made.

The area was, then, a lawful excavation. The evidence shows that the opening into it was properly protected when the Fishers leased the premises to Hill ; that the injury to it whereby it was rendered defective, occurred when the premises were in Hill's possession, and we insist, therefore, that the fourth, fifth, sixth, and seventh requests made by the defendants' counsel are sustained by the weight of authority as proper to have been made, and the refusal of the Court to charge as requested was error.

*Levi Bishop,* for defendant in error.

I.  It is not denied that the title of the adjacent owner extends to the centre of a street, subject to the public easement.—*3 Kent, 572, 3, 4, and note.* The second charge for the plaintiff was correct in principle, and it is fully sustained by the authorities. — *Heacock v. Sherman, 14 Wend., 58, 60 ; Dygert v. Schenk, 23 Wend., 446 ; Congreve v. Morgan et al. 5 Duer, 495 ; Same, on appeal, 18 N. Y. R., 79 ; Same, another case, 18 N. Y. R. 85 ; Davenport v. Ruckman, 10 Bosw., 20, 31, 36-7 ; Bellinger v. N. Y. C. R. R., 23 N. Y., 43 ; Selden v. D. & H. Canal Co., 29 N. Y., 634 ; McMahan v. New York, 33 N. Y., 642 ; Irvin v. Fowler, 5 Robertson, 482 ; Steele v. Fuller, N. Y. Superior Court.*

II.  The first charge, at the request of the plaintiff, with reference to the liability of Griffith, was also correct, as a principle of law, to be applied by the jury to the evidence in the case ; and we claim, that the authorities cited, upon the finding by the jury of the facts suggested in this charge, render Griffith clearly liable. The only real ques-

tion is whether there was testimony in the case, upon which this charge could be based, and which could fairly be left to the jury.

It is well settled that all, who participate in a wrong, are liable as principal actors. All "who direct or order," or "assist on the occasion," or "assent to the act before or after it is committed," are liable for the tort.—*1 Chitty, p. 79, 80; 2 Hilliard on Torts, 292, 3, 4; Herring v. Hoppock, 15 N. Y., 413; Judson v. Cook, 11 Barb., 642; Brown v. Perkins, 1 Allen, 89; Stone v. Dickinson, 7 Allen, 26; Clark v. Boles, 15 Ark., 452; Dreyer v. Miry, 23 Mis., 434; Woodruff v. Halsey, 8 Pick., 333; Marram v. Belcher, 4 B. & C., 704.* And the question of a joint liability is for the jury.—*2 Hilliard, 296, 301.*

III. The first request of the defendants was given as asked, and, as an abstract proposition, was, no doubt, well enough, under the statute of frauds, in regard to parol agreements for the purchase and sale of goods; but it in reality had nothing to do with the case. The question was not whether Hill and Griffith had so far completed a contract of purchase, as to pass the legal title, or give a right to enforce the contract in a dispute as to title; but the question was whether Griffith was so far in the use of the premises for private purposes as to render him liable for their unsafe condition, even if the strict legal title to the goods was still in another. In this case the agreement to purchase was complete, only an inventory was to be taken by Griffith, as purchaser, with Hill, the vendor, to ascertain what the purchase would amount to. For the purpose of ascertaining that fact, and even for the general purposes of the sale, there had been a delivery, and Griffith was in possession to every practical intent.

IV. In this view of the case, the second request of the defendants, in connection with the first, was not true in

fact. There was evidence directly tending to show that there was a delivery, and a use and occupation for the purpose of completing the purchase; and this was clearly enough to enable Griffith to commit or wrongfully suffer the mischief. It is settled that the exercise of acts of ownership by the purchaser, with the knowledge and consent of the vendor, amounts to a delivery.—*2 Selwyn's N. P., 868; Parsons on Mercantile Law, 76; Gray v. Davis, 10 N. Y., 285.*

V. As to the third request of the defendants, it was clearly improper under the doctrine of the cases before cited. All who use the public highway for private purposes stand in the character of insurers of the public safety. All who assist, join in, assent to, direct, or order a wrong, are liable for the consequences; and whether they do so or not is a question for the jury. This request also seems to imply, that if a person is ignorant that he is committing a wrong, or has no intent to commit it, he is excused. The contrary is the well established rule.—*1 Chitty, pp. 82, 129, 339; 1 Hilliard on Torts, 90, 1, 2, and 98; 2 Same, 75, 86, 94, etc.*

VI. I have already answered the fourth request to charge by the defendants, in the argument of my first point. The owner of property, who fixes up a man-trap like this for his own profit and advantage, cannot shirk his responsibility by leasing the premises out to another. If so, he might lease to an irresponsible or a non-resident party, and thus avoid all responsibility, while he should reap a benefit in an increase of rent.

By leasing the premises to a tenant, who takes possession, as was said by the Supreme Court of New York, in the McLeod case, another person is simply added to those who are liable.

VII. The fifth request, although designed to throw the

responsibility over on to Hill, is nevertheless, in view of the finding by the jury, rather severe on Griffith. If the occupant or tenant has agreed, as a conclusion or presumption of law, to keep the premises in repair, then Griffith is clearly liable for not doing so, during the two weeks in which he was using the premises to perfect his inventory and purchase.

VIII. Perhaps the two first members of the sentence in the sixth request to charge, are correct; but if the principles and authorities urged under my first point have any weight, the concluding part of the request cannot be law.

IX. The first part of the seventh request is not correct. If they had any such right it was not a perfect one. It was at least limited as to time, extent, manner, the public safety, and the public convenience; and it was subject to the will and consent of the public authorities having charge and supervision of the streets. The Common Council have the full control of all the streets and alleys of the city.—*Charter of 1861, pp. 41, 42; S. L. of 1857, pp. 97, 98; Angell on Highways,* § *241.* No one may obstruct, excavate, or in any way lessen the public use of a street, except under a license therefor obtained from the proper authorities, and then only in pursuance of, and subject to, such limitations and restrictions as such authorities might impose.—*Angell on Highways,* §§ *237, 241.* No license to excavate this sidewalk and construct a vault there with this coal-hole was shown ever to have been obtained. The fee of the land, simply, remains in the adjacent proprietors, subject to the public easement.—*3 Kent, 572–4.* The public easement and use are the paramount objects of a street or highway, and all private rights and interests are subordinate to them.

X. It has occurred to me to enquire into the nature of

this proceeding on error, and ascertain what the rights of parties may be under it. It is a familiar doctrine that a writ of error is a new suit.—*2 Tidd's Practice, 1005; 4 Denio, 84.* The assignment of errors is in the nature of a declaration.—*2 Tidd's Practice, 1107.* On a writ of error the judgment below may be reversed in whole or in part.— *2 Tidd, 1128.* The plaintiffs in error being plaintiffs in fact as well as in name, and the assignment of errors being a declaration of a joint cause of action, must not the plaintiffs fail as to errors in which they are not jointly interested, the same as plaintiffs fail in all other cases, where they sue jointly, but fail to make out a joint cause of action? In this case there is no joint cause of action in any one assignment of error, or in any one of the charges asked and given or refused in the court below; and yet we have here a joint declaration by all the plaintiffs in error. The cause of action here, of the plaintiffs in error, if any they or either of them have, is also clearly several and not joint. In such a condition of things ought not the plaintiffs in error to have severed in their assignments of errors under the rules of the court?—*Rules 35, 36, 37.*

And furthermore, as the cause of action below was several in its nature, and might be severed by the verdict and judgment, and as all the requests to charge were several as to different defendants, why might not and why would not the court, if there had been a proper several assignment of errors, and if error should be found in the record, sever the judgment here as to different parties, affirming as to part and reversing as to others?

And if the Court might and would do this, a joint assignment of errors, as on this record, ought to be fatal to these proceedings, even if errors should be found, provided the plaintiffs in error cannot jointly complain of them.

If the plaintiffs in error here have linked themselves together in a series of complaints, as to all of which some one or more of the plaintiffs in error have no right to complain, they ought to fail as to the whole; the same as a plurality of plaintiffs generally, in an action at law, must fail if any one or more of them have no cause of action.

CHRISTIANCY, J.

This was an action on the case brought by the defendant in error, against the plaintiffs in error, to recover damages received by her by falling into a scuttle or hole in the sidewalk on Woodward avenue, Detroit, in front of a store in what is known as Fishers' Block, of which said Fishers were the owners, and which they had erected some years before. The scuttle opened into a vault beneath the sidewalk (as usual in such cases), connecting with the cellar, and was constructed and used for putting wood and coal into the cellar for the use of the store. It was constructed by the owners in the usual manner, by putting in an iron ring or thimble through the stone sidewalk, and fitting into this an iron cover, coming up even with the surface of the walk, and forming part of it. Some time prior to this accident the thimble had been broken by throwing wood against it, which loosened the cap or cover in such a manner that by stepping on the side of it, it would turn down; and in this way the plaintiff received the injury, about dusk on the evening of the 28th December, 1868.

The premises were not in the occupation of the Fishers, the owners, and never had been occupied by them, having always been occupied by tenants under them. And, some time previous to the accident, this store had been leased to

a Mr. and Mrs. Hill, or one of them (it does not definitely appear whether the lease was to Hill or wife, or both, though the wife seems to have owned the stock), and was occupied by them as a drug store, under the lease, up to about the time of, if not after the ' accident, which is one of the questions in the case.

On the 16th day of December, 1868, the defendant, John H. Griffith, entered into a verbal negotiation or arrangement with Hill and wife for the purchase of the stock at cost, and for the purchase of the lease and fixtures. The inventory of the stock was completed on the 26th, having been made by Hill and wife and Griffith, and persons employed by them, one of them, Kier, having been employed by Griffith, but paid out of the drawer from sales made prior to the completion of the sale to Griffith; and during the time of making the inventory all the parties had, of course, access to the store, but the key was kept by Hill, he opening the store in the morning and locking it at night. After the inventory of the stock was completed, delays occurred, in reference to the fixtures, and in reference to the title of a lot in Detroit which the brother of Griffith was to mortgage to secure a part of the purchase money, a search and abstract of which had to be made, and there were consequent delays in executing the bond and mortgage and the bill of sale of the stock. And on the 26th, Hill, seeming to apprehend that the proper securities might not be given, and the sale not be completed, appointed Kier (who had been aiding in taking the inventory) to take charge of the key and the money in the store, till the matter of the sale should be finally decided. It seems some goods had been sold from time to time after being placed on the inventory, and these sales still continued, with the apparent understanding that if the sale to Griffith should be completed, the money would be his

in place of the goods sold, otherwise it would belong to the Hills.

On the evening of the 28th, about half past five, or between that and six o'clock (which the evidence tends to show was after,—though but a little after the accident), the papers having been examined by Cleaveland Hunt, an attorney in his office, were delivered, and the money and securities handed over,—except the bill of sale of the goods, to be yet executed by Mrs. Hill, who was not present with her husband at the attorney's office. The bill of sale was executed afterwards, that evening or the next morning, and received by Griffith in the morning. Up to the time of the delivery of the other papers at the attorney's office, no money or other consideration had been paid by Griffith, and there had been no delivery of the goods or any part of them, nor of the key. And there is no evidence in the record tending to show that Griffith had any possession or control of the premises otherwise than being there by the mere permission of the Hills, as already stated, making the inventory and settling the preliminaries of the purchase.

But after the payment and the delivery of the papers, which took place at the attorney's office, Griffith, about six o'clock in the evening, and some time after the accident, came to the store and assumed the possession, though he did not receive the bill of sale of the goods till the next morning

There was no evidence in the case tending in the least degree to controvert any of the facts above stated, as to the time of the completion of the purchase, or the time when Griffith became entitled to, or took the possession, unless the admission made by him to Wilkins, after the accident, can be construed as such.

Understanding that Wilkins was concerned on the part of the plaintiff in her claim against him for damages, and that he was acting in her behalf, Griffith, in the course of

a conversation with Wilkins (as testified by the latter), said, among other things, that there was a question as to his liability, owing to the fact that neither party had possession of the premises at the time; that they were about transferring the title or lease; that the papers were nearly made out; that they had been executed; and the attorney of the opposite party wished to see them again for the purpose of examining them again, to see if they needed correction, and they had been passed across the table for the attorney of the opposite party to see whether they needed correction, and that about that time the accident must have happened; and for this reason he did not know who was liable. Being further examined Wilkins says, "he said he was in actual possession, but doubted whether he was in the legal possession for the reason stated;" and on cross-examination he further says that Griffith said "there was a question of his liability; that he had not assumed possession."

Now, we think it clear that all Griffith states here in regard to being in possession, refers to the facts, as stated in all the testimony of witnesses who speak to those facts, and about which there is not the shadow of discrepancy, —and if he did say he was in actual possession, it was accompanied with such qualifications as clearly show that it was, in law, neither an actual nor a legal possession; that in other words he was mistaken in his legal opinion of what constituted possession. About the facts there was no dispute and no discrepancy.

But no kind of possession by him which did not give him the control of the premises, as between him and the Hills, could have rendered him responsible for this accident; as no other could impose upon him, instead of them, the duty of keeping the scuttle in repair. And there was not only no evidence tending to show he had such possession

at the time of the accident: but the tendency of all the testimony upon this point was to show that he had yet obtained no such possession, and that the Hills still retained the possession and control; that though he was in the store a part of the time, he was there only by the permission of the Hills, and whatever he or his servants did there was only by their permission.

The plaintiff has doubtless suffered an injury for which she ought to be compensated. But Griffith, so far as appears by the evidence, was as guiltless of all wrong, legally and morally, as the plaintiff herself. And it would be no less a violation of morals or of law to compel him to make good the damages than to leave her to bear them herself. She has no more right, upon any legal or equitable principle, to call upon him than she would have to call upon any customer who might have stepped into the store to purchase a box of pills. The Court, therefore, erred in submitting the question of Griffith's possession, or his liability, to the jury. There was no evidence tending to establish either.

We will next enquire whether there was any evidence tending to establish the liability of the Fishers, as owners, who made the excavation and put in the scuttle.

The evidence tended to show that it was in good and safe condition when made, and continued so when leased to the Hills, and there was no evidence of an opposite tendency. It does not appear that there was any provision in the lease, or any agreement of the lessor, to keep the premises in repair.

The Court, at the plaintiff's request, charged, substantially, that if the jury should find from the evidence that the Fishers constructed the building, scuttle, and improvements, and that from their construction, several years ago, down to the time when the injury occurred, they continued to be

and were the owners, they are liable in this action, though they had leased the same to other parties,—that they were bound to keep the scuttle in good and safe condition while they owned the building and improvements, and it makes no difference that they may not have known that the scuttle was unsafe.

And the Court refused to charge as requested by the defendants,—

"1.  That it was not the duty of the Messrs. Fisher, as owners of the building in question, to keep the same in repair while it was occupied by tenants, unless there was an agreement made with the tenants that they (the Fishers) should make the repairs; and that, in the absence of such agreement, they are not liable for the injury complained of, caused by a want of repair, while in the possession of their tenants.

"2.  That there is no evidence tending to show that the scuttle was out of repair when the premises were leased; and,

"3.  That the Fishers had a perfect right, in erecting their store, to excavate under the sidewalk, if they put the same in a perfectly secure and unobstructed condition; and if the accident to the plaintiff occurred by reason of the negligence of their tenants in permitting the scuttle to get out of repair, and not by reason of any original defect in the manner of making the same, then the Fishers are not liable in this action."

We think the Court erred both in charging as requested by the plaintiff below, and in refusing to charge as requested by the defendants.

There are some cases in the State of New York which apparently sanction this ruling of the Court, and would hold the owners, who made the excavation, and the scuttle responsible for all injuries resulting from the want of its

entire safety, though the owner was guilty of no negligence in the manner of its construction; thus making the owner an absolute insurer against all injuries which may arise from it, without reference to his negligence or vigilance.— *Congreve v. Morgan et al.*, *5 Duer*, *495*, and same case on appeal, *18 N. Y.*, *79;* and this though the work was well and safely constructed, and was afterwards destroyed or injured by the act of a wrong-doer.—*Congreve v. Morgan et al.*, *18 N. Y.*, *84;* and see *Davenport v. Ruckman, 10 Bosw.*, *20;* and *Irvin v. Fowler, 5 Robertson R., 482.*

But these cases go upon the avowed principle that such excavations in the public street are unlawful in themselves, *ab initio;* and that no person is authorized to make them without affirmative legislative authority (which however I infer might be by resolution or ordinance of the common council.—*Milhau v. Sharp, 17 Barb., 435.*) And, if it be conceded that the construction itself was a wrongful act, and in violation of law, then the consequences which the New York courts have drawn from this fact would seem naturally enough to follow upon common-law principles. This is well illustrated by the case of *Ellis v. Sheffield Gas Co., 2 Ellis & Blackburn, 767*, which turns upon this distinction. And if there had been an ordinance of the city of Detroit against making such constructions without special permission of the council, which had not been obtained, or forbidding their construction except in a certain manner, and such ordinance had been violated in constructing this excavation or the scuttle, perhaps the rule of responsibility adopted by the courts of New York might be applicable to the present case. But it is conceded there was no such ordinance of the city of Detroit, applicable to the construction of this work (and that no license or permission was obtained from the common council for its construction), and we are satisfied that, at common law, the making of

such excavations under sidewalks in cities, and the scuttles therein, for such purposes as this was made and used for, were not treated as nuisances in themselves, or in any respect illegal, unless the walk was allowed to remain broken up for an unreasonable length of time, or the work was improperly or unsafely constructed; though it would afterwards become a nuisance if not kept in repair.

Judging from the reported cases, the usage or custom of constructing such works in cities seems to have been, in England for a long period, as general as we know it has been in this country. And, though we find many decided cases in the English books, for private injuries caused by these structures being out of repair, and indictments for obstructing highways and streets in a great variety of ways, we have been cited to no English cases, and have discovered none, in which such works have been held illegal, in themselves, when properly and safely made, without any legislative permission, or that of the municipal authorities. Their legality seems, in all the cases, to have been assumed by the courts without any showing of such special authority or any authority. They have been treated as nuisances when allowed to be out of repair, and private actions have frequently been sustained for injuries received in consequence; but we find no intimation of their original illegality, when safely and properly constructed. This will appear from the cases cited below upon the question, whether the tenant or the landlord is bound to keep them in repair. And the same view seems to have been quite generally taken in this country, outside of the State of New York.

The principles of the common law applicable to this question are, we think, clearly stated in *Clark v. Fry, 8 Ohio State R., 358*, which was an action for damages caused by the plaintiff's falling into an excavation made

in the sidewalk (or part of the street) in front of the defendant's lot, in the city of Toledo, communicating with the cellar; and the Supreme Court of Ohio held that the right of transit in the use of the public highways is subject to such incidental, temporary, or partial obstructions, as manifest necessity requires; and that, among these, are the temporary impediments necessarily occasioned in the building and repairing of houses and lots fronting on the streets of a city, and in the construction of sewers and cellars, etc.; that these are not invasions, but qualifications of the right of transit on the public highway; and the limitation on them is, that they must not be unnecessarily interposed or prolonged; that such temporary obstructions upon the highway, when guarded with due care to prevent danger to the public, and not unnecessarily extended or continued, are not nuisances, and do not require a license from the municipal authority to legalize them, although suitable regulations by city authorities requiring such obstructions to be properly guarded and to prevent them from being made in an improper manner or continued unnecessarily, are usual and highly proper.

The original erection having been legal and in a proper and safe condition when the Fishers leased the premises to the Hills, and the injury being received in consequence of the scuttle getting out of repair during the tenancy, were the Fishers liable as owners or otherwise for having failed to keep it in safe condition and repair? The lease, so far as appears, being silent as to who should make repairs, it was the duty of the lessees to keep the premises in repair. *Gott v. Gandy*, 22 *Eng. L. & Eq.*, 173; *Leavitt v. Fletcher*, 10 *Allen*, 121; *Elliott v. Aiken*, 45 *N. H.*, 36; *Estep v. Estep*, 23 *Ind.*, 114; *City of Lowell v. Spaulding*, 4 *Cush.*, 277.

And the owners, being out of possession and not bound

to repair, are not liable in this action for injuries received in consequence of the neglect to repair.—See *Payne v. Rogers,* 2 *H. Bl., 350*—a case much like the present, except that it appeared the landlord was to make the repairs, and on this ground alone he was held liable to the plaintiff, *to avoid circuity of action.* And see, as to the last point, *City of Lowell v. Spaulding,* above cited, *Chauntler v. Robinson, 4 Excheq., 163*—that owner, as such, out of possession, not bound to repair ; *Rich v. Basterfield, 4 M. G. & S., 783 ; Russell v. Shenton, 3 Ad. & E. (N. S.), 449 ; Bishop v. Bedford Charity, 1 Ellis & Ellis, 697,*—injury from falling through grating,—all the judges agree as to this point, though divided as to the evidence.—*Cheetham v. Hampson, 4 T. R., 318.* Owner not bound to repair fences when premises leased to tenant.—See also *Regina v. Watts, 1 Salk., 357.*

The same rule seems clearly settled in Pennsylvania.—*Offerman v. Starr, 2 Penn. (State) R., 394; and Bears v. Ambler, 9 Penn. (State), 193.* The latter is a case like the present in all its material circumstances. Suit against owner, held not liable, premises having been leased in good order. And in Massachusetts, *City of Lowell v. Spaulding,* cited above, and in Maryland, *Owings v. Jones. 9 Md., 108,* a very instructive and well considered case for an injury caused by falling through a vault under sidewalk.

But if the scuttle had been out of repair and unsafe when leased to the Hills, the Fishers might, perhaps, have been held liable. *Rich v. Basterfield,* above cited, and *Todd v. Flight, 9 C. B. (N. S.), 377.*

There may be good sense and sound policy in the rule adopted in New York, making owners, constructing such works, liable as insurers against all injuries which may arise from them, irrespective of the question of negligence.

But we do not think it is the sense or the policy of the common law.

The assignment of errors is objected to by the counsel for the defendant in error, because it appears to be joint in behalf of both the plaintiffs in error; and yet some of the assignments are upon errors which could only affect Griffith, and others are upon grounds which could only affect the Fishers; and it is urged that the parties should have severed in their assignments of error.

We think there is no ground for this objection, and we are aware of no rule or authority requiring such severance in such a case. The plaintiffs in error were jointly sued and a joint judgment recovered against them, and all join in bringing the writ of error. The assignment should be considered as joint and several, or joint or several, according to the nature of the error assigned, and as affecting the respective plaintiffs in error.

The judgment must be reversed with costs and a new trial awarded.

The other Justices concurred.