JULIUS LEAUX, Respondent, *v.* THE CITY OF NEW YORK, Appellant, Impleaded with JAMES JACOBS. (No. 1.)

*Negligence — injury from an opening into a sewer on demised premises becoming out of repair — the city of New York, the lessor, is not liable to an employee of the tenant injured because thereof.*

Where a tenant assumes the obligation to make the necessary repairs during his term, if the building becomes out of repair and the tenant or one of his employees sustains injuries in consequence thereof, the landlord is not liable.

The city of New York granted to one Jacobs the privilege of selling refreshments in the restaurant building in Central Park in said city for a considera-tion therein specified. Jacobs agreed "to make at his own proper cost and expense from time to time as may be required, all repairs, renewals and reno-vations necessary to place and maintain said building in good and proper con-dition of said Commissioner during the period of this license. All such repairs, renewals and renovations shall be made under the direction of said Commis-sioner;" and that he would "indemnify and save harmless the said parties of the first part of said department from all suits or proceedings to recover dam-ages for injuries received or through the said party of the second part, his agents, servants or employees."

Within a passageway in the yard of the restaurant, which was continuously used by the employees of Jacobs, but not by the public, was a sewer opening, three feet in depth, which was covered by an iron cover about one foot and six inches in circumference. During the continuance of the arrangement with Jacobs, one of the latter's employees slipped, and in consequence of the cover of the sewer opening being broken, fell into such opening and was injured. So far as appeared this cover was in good order when possession of the premises was delivered to Jacobs.

*Held,* that the city could not be charged with negligence because of its failure to keep the cover in repair.

Appeal by the defendant, The City of New York, from a judg-ment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 31st day of January, 1903, upon the verdict of a jury for $2,000, and also from an order entered in said clerk's office on the 13th day of February, 1903, denying the said defendant's motion for a new trial made upon the minutes.

*Terence Farley,* for the appellant.

*Frederick Wiener,* for the respondent.

Ingraham, J.:

This action was to recover the damages sustained by the plain-tiff in consequence of his falling into a sewer upon the premises, a part of Central Park, occupied by the defendant Jacobs as a restaurant under an arrangement with the park commissioner of the borough of Manhattan, in the city of New York. The agree-ment under which Jacobs occupied these premises is designated "Lease of restaurant near Arsenal, Central Park, from City of New York, to James Jacobs," dated the 25th day of January, 1901, and

is between the city of New York, of the first part, by the department of parks, and James Jacobs, of said city, party of the second part. The agreement provided that " The said parties of the first part, in consideration of the covenants and conditions herein contained on the part of the party of the second part, and in order to promote and increase the public enjoyment of the Public Park, known as The Central Park, in said city, have granted and by these presents do grant to the said party of the second part the privilege of selling refreshments in the restaurant building near the ' Arsenal ' in said park * * * for the term of five (5) years from the first day of February, 1901, unless this agreement be sooner revoked, canceled or annulled, as herein provided." In consideration thereof the party of the second part covenanted and agreed to " keep and maintain and conduct the aforesaid place of refreshment or restaurant in a style and manner satisfactory to the Commissioner of Parks for the Boroughs of Manhattan and Richmond and subject to such restrictions, rules and regulations as he may prescribe ; * * * to render to said Department on or before the 10th day of each and every month during the term of this agreement, a verified statement in writing of the gross receipts of said privilege ; * * * to account for and pay over to said Department, at the time of rendering each monthly statement as aforesaid, a sum equal to ten (10) per cent on such receipts ; * * * to make at his own proper cost and expense from time to time as may be required, all repairs, renewals and renovations necessary to place and maintain said building in good and proper condition of said Commissioner during the period of this license. All such repairs, renewals and renovations shall be made under the direction of said Commissioner ; " and that Jacobs would " indemnify and save harmless the said parties of the first part and said Department from all suits or proceedings to recover damages for injuries received by or through the said party of the second part, his agents, servants or employees."

In pursuance of this agreement Jacobs entered into possession of the premises, consisting of several buildings, which appear to have been surrounded by a fence. Included within this inclosure there was a restaurant, a kitchen and a building which seems to have been used as an icehouse. Separated from this icehouse was a building designated upon the plan of property introduced in evi-

dence as a " wood and storage house or sheds." Between this storage house and icehouse there was a passageway that was covered with a stone pavement, and against the icehouse in this passage was an ice breaker, a machine for breaking ice, which was used by Jacobs in conducting the restaurant. Between this ice breaker and the storage house there was an opening into a sewer, covered by an iron cover about one foot and six inches in circumference, and the opening into the sewer was about three feet in depth. The plaintiff was employed by Jacobs at the restaurant. All of Jacobs' employees used this yard continuously, but no part of the yard was open to the public.

The plaintiff testified that he had been employed by Jacobs in making ice cream all the summer of 1901; that about the first of September he noticed one morning that this covering of the sewer was broken and the cover was loose; that on that day he told Jacobs that the covering was broken and that it was dangerous for the plaintiff to work over it; that Jacobs said he would tell the man to fix it, whereupon the plaintiff went back to work and continued to work there until the accident; that on the ninth, tenth or eleventh of September the plaintiff, when engaged in his work, took a cake of ice from the icehouse and carried it around to the breaker; that as he attempted to put the ice into the breaker his foot slipped and struck this broken cover, and he fell into the sewer and was injured. The action was brought against the city of New York and Jacobs. At the end of the trial the court, on motion of the defendant Jacobs, dismissed the complaint as to him, and submitted the question of the negligence of the city to the jury who found a verdict for the plaintiff, and from the judgment entered upon that verdict the defendant, The City of New York, appeals.

The question on this appeal is whether the defendant, The City of New York, was negligent in allowing this cover to the sewer to remain out of repair. The obligation of the city to keep in repair the public walks and places of the parks is not presented, as it is apparent that this manhole into which plaintiff fell was not on the public walks of the park. It was on a portion of the premises, the possession of which had been given to Jacobs for the purpose of keeping a restaurant and furnishing refreshments. This portion of

the yard of the restaurant was used exclusively for carrying on the business which Jacobs carried on under the permission of the department. There is no evidence to show that at the time that Jacobs was given possession of these premises by the city this sewer cover was at all out of repair, or that the premises were not in a perfectly safe condition for the use for which they were intended. The plaintiff testified that Jacobs' employees were in the habit of removing this covering and throwing refuse into the sewer. The sewer having been, so far as appears, in good order when possession was delivered to Jacobs, and the exclusive possession and control of the property given to him under his agreement with the department of parks, Jacobs being bound to make all repairs to the property, it would seem to be clear that there was no obligation towards Jacobs and his employees for the city to keep this building in repair. Whether we call this instrument a lease or a license does not seem to me to be material. The city assumed no obligation to Jacobs and his employees to make such repairs as were necessary to enable them to conduct safely the business that they were carrying on. There was nothing in the agreement between the department of parks and Jacobs that imposed such an obligation upon the city. Nor was the duty imposed upon the city by the charter (Laws of 1897, chap. 378), or by any express or implied obligation, to see to it that during the continuance of this arrangement between the city and Jacobs the premises should be kept in repair. We must keep clearly in mind the distinction between these premises, a part of the park that, under the arrangement with Jacobs, had been set apart for the conduct of his business, and the portion of the park which was thrown open to the public and which the public were authorized to use. As to the walks in the parks which the public are authorized to use, the city is bound to keep them in repair, so that a person using them should not be injured, but there was no public walk upon these premises. The city had not invited the public to use this passageway as a part of the park, but, on the contrary, had given to Jacobs the use of the property, and it was while Jacobs and his employees were using the property that the accident happened. The situation is not at all different from, and the liability upon the city is the same as, the case of an ordinary lease of a building by a landlord to a tenant, where the tenant assumes the obligation to make the necessary repairs

during his term. In such a case, if the building becomes out of repair and the tenant or an employee is injured, there is no liability on the part of the landlord for the injuries sustained.

The liability of an owner of real estate for the unsafe condition of premises not in his immediate possession is discussed in *Ahern* v. *Steele* (115 N. Y. 203). In that case Judge Earl, in delivering the opinion of the Court of Appeals, says : " It is not the general rule that an owner of land is, as such, responsible for any nuisance thereon. It is the occupier, and he alone, to whom such responsibility generally and *prima facie* attaches. * * * The owner is responsible if he creates a nuisance and maintains it; if he creates a nuisance and then demises the land with the nuisance thereon, although he is out of occupation ; if the nuisance was erected on the land by a prior owner, or by a stranger, and he knowingly maintains it; if he has demised premises and covenanted to keep them in repair, and omits to repair, and thus they become a nuisance ; if he demises premises to be used as a nuisance, or for a business, or in a way, so that they will necessarily become a nuisance. In all such cases I believe there is now no dispute that the owner would be liable. But an owner who has demised premises for a term during which they become ruinous, and thus a nuisance, is not responsible for the nuisance unless he has covenanted to repair."

*Clancy* v. *Byrne* (56 N. Y. 129) applies and enforces the same proposition. Judge Folger there says : " Generally speaking, the person responsible for a nuisance is he who is in occupation of the premises on which it exists. * * * As between him who is the landlord and owner and him who is the lessee and occupant of premises, there is, in general, no obligation upon the former to keep them in repair, when he has made no express contract to that effect." In *Edwards* v. *New York & Harlem R. R. Co.* (98 N. Y. 248) it is said : " If a landlord lets premises and agrees to keep them in repair, and he fails to do so, in consequence of which any one lawfully upon the premises suffers injury, he is responsible for his own negligence to the party injured. If he demises premises, knowing that they are dangerous and unfit for the use for which they are hired, and fails to disclose their condition, he is guilty of negligence which will in many cases impose responsibility upon him. * * * But where the landlord has created no nuisance and is guilty of no willful

FIRST DEPARTMENT, NOVEMBER TERM, 1903. [Vol. 87.

wrong or fraud or culpable negligence, no case can be found imposing any liability upon him for any injury suffered by any person occupying or going upon the premises during the term of the demise ; and there is no distinction stated in any authority between cases of a demise of dwelling houses and of buildings to be used for public purposes. The responsibility of the landlord is the same in all cases. If guilty of negligence or other *delictum* which leads directly to the accident and wrong complained of, he is liable ; if not so guilty, no liability attaches to him." In *Wolf* v. *Kilpatrick* (101 N. Y. 146) the same rule is recognized and applied. In *Trustees of Canandaigua* v. *Foster* (156 N. Y. 354) the general rule is stated : " It must be further conceded that, if the store was in proper condition at the beginning of the term, the owner was not bound to repair it for the protection of those who, upon the express or implied invitation of the tenant, might enter it for the transaction of business or any other purpose."

There is nothing to take the case out of this general rule and throw upon the city of New York a liability for an accident which happens because a portion of the premises had become out of repair and dangerous to Jacobs or his employees in the use of the premises, the use of which had been exclusively granted to Jacobs and which was exclusively in his possession.

I think, therefore, that as against the city of New York no cause of action was shown, and that the denial of the motion to dismiss the complaint was an error which requires a reversal of the judgment.

The judgment and order are, therefore, reversed and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., PATTERSON, HATCH and LAUGHLIN, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.