[Civ. No. 2873. Second Appellate District, Division Two.—March 21, 1919.]

## ALICE RUNYON et al., Appellants, v. THE CITY OF LOS ANGELES (a Municipal Corporation), et al., Respondents.

[1] APPEAL—ORDER DENYING NEW TRIAL.—An appeal from an order denying a motion for a new trial taken after section 963 of the Code of Civil Procedure was amended in 1915, must be dismissed.

[2] ID.—DIRECTED VERDICT—RECORD.—When exceptions are taken to a nonsuit, or to a directed verdict, all the evidence necessarily becomes a part of the case and should be included in the record on appeal.

[3] LANDLORD AND TENANT—LEASE OF PART OF BUILDING—INCIDENTS THERETO.—A lease of a part of a building passes with it, as an incident thereto, everything necessarily used with or reasonably necessary to the enjoyment of the part demised.

[4] ID.—LEASE OF STORE—APPURTENANCES.—The general rule is that where a store is leased, everything then in use for the store, as an incident or appurtenance, passes by the lease.

[5] APPEAL — DIRECTED VERDICT — PRESUMPTIONS—APPURTENANCES TO STOREROOM.—On this appeal from a judgment on a directed verdict, the appellate court, not having the complete evidence before it, was bound to indulge in every intendment in favor of the regularity of the court's procedure, and, therefore, was bound to assume that the basement under the leased storeroom in question, including the space under the sidewalk, was reasonably necessary to the enjoyment of such storeroom and passed with the lease thereof as a necessary incident or appurtenance.

[6] LANDLORD AND TENANT—COVENANT TO REPAIR.—Where the lease to a storeroom carries with it, as a necessary incident or appurtenance, the basement thereunder, it also includes the iron grating that per-

mits the entrance of light and air to such basement, and the tenant's covenant to keep the leased premises in repair applies to it.

[7] MUNICIPAL CORPORATIONS—EXCAVATIONS UNDER SIDEWALKS—IRON GRATINGS—NUISANCE.—An abutting owner, whose title extends to the center of the street, may excavate a vault or cellar under the sidewalk, and with the permission, express or implied, of the city authorities, may insert in the sidewalk, for the purpose of admitting light and air to the vault or cellar, an iron grating, or other similar device, if safely and properly constructed, and such contrivance in the sidewalk is not a nuisance *per se*.

[8] ID.—REPAIRS—DUTY OF OWNER.—If such abutting property owner making the excavation and constructing the grating, coal-hole, or other similar device in the sidewalk does so with the permission of the proper city authorities, and the work is not inherently, in its nature and character, a nuisance *per se*, such owner is liable only in the event that he fails to use ordinary care and diligence in constructing the grating or other similar contrivance and keeping it in such repair that it shall be as safe for the use of the public as any other part of the sidewalk.

[9] LANDLORD AND TENANT — FAILURE TO REPAIR — LIABILITY FOR INJURIES.—When premises are in good repair at the time they are let, and the landlord, under the terms of the lease, is not bound to keep them in repair, the tenant in possession, and not the landlord, is liable for an injury resulting from a failure to repair the pavement in front of the premises.

[10] ID.—COVENANT TO REPAIR—ORDINARY CARE.—If, as originally constructed, the iron grating or other similar device in the sidewalk is safe and not a nuisance *per se*, and, at the date of the execution of the lease of the part of the premises to which it is solely appurtenant, it is safe and not, in its nature and character, a nuisance, the owner exercises ordinary care to keep it in such condition if he exacts from his lessee a covenant to make all necessary repairs.

[11] ID.—INJURY TO INVITEE—LIABILITY OF LANDLORD.—One who, upon the express or implied invitation of the tenant, enters or is proceeding to enter upon the leased premises, is an invitee, and as such stands in the shoes of the tenant, and may not recover if the tenant cannot; and the tenant may not recover if the burden of repairing rests upon him.

[12] ID.—VOLUNTARY REPAIRS BY LANDLORD—ADMISSION OF LIABILITY. Voluntary repair by a landlord of a defect in the demised premises after an injury resulting therefrom is not an admission of liability, and, therefore, in an action to recover for such injury, evidence of such a repair by the landlord is not admissible.

APPEAL from a judgment of the Superior Court of Los Angeles County. Curtis D. Wilbur, Judge. Affirmed.

The facts are stated in the opinion of the court.

C. E. Joslin for Appellants.

Norman Sterry and Gibson, Dunn & Crutcher for Respondents.

FINLAYSON, P. J.—Action by husband and wife to recover damages for injuries to the wife, received from falling through a broken iron grating in the sidewalk in front of a barber-shop on the First Street side of the Nadeau Hotel Building—a building on the southwest corner of First and Spring Streets, in the city of Los Angeles, and owned by the defendants other than the city. The city's demurrer to the complaint was sustained without leave to amend, leaving the owners as the sole remaining defendants. At the conclusion of the evidence the court directed the jury to return a verdict for defendants. From the judgment and an order denying their motion for a new trial, plaintiffs appeal. [1] The appeal from the order must be dismissed, it having been taken after section 963 of the Code of Civil Procedure had been amended in 1915.

At the time of the accident the hotel was vacant, but all the ground floor storerooms on the First Street side of the hotel building were leased to tenants, including the storeroom known as 212 West First Street, in front of which, in the sidewalk, was the broken grating that was the cause of the injury. This storeroom was then occupied and used as a barber-shop by one Cooley, a tenant of the owners under a written lease wherein it is expressly provided that the tenant, at his own cost, shall make all necessary repairs during the term of the lease.

The broken grating, which was twenty-seven inches long by eleven and one-half inches wide at one end and ten inches at the other, was made of iron bars an inch in thickness, extending from end to end. At the date of the execution of the lease one bar was out of the grating. It was stipulated at the trial that Mrs. Runyon could not have been injured by

40 Cal. App.—25

the grating with only one bar out. So that, though one bar was out at the date of the lease, the grating was not then dangerous, and therefore, at that time, not a nuisance. The second bar—the breaking of which caused the grating to become a menace to public safety and a nuisance—was broken by a third person while delivering paper to a subtenant who had sublet from Cooley a part of the basement under the barber-shop. Under each storeroom on First Street is a separate basement, separated by brick walls from the basement under each of the other storerooms and likewise from the hotel basement. The door to Cooley's barber-shop is set in from the line of First Street about six feet. On the right or west side of this inset is a bootblack-stand, extending from the line of the sidewalk to the door of the barber-shop. The iron grating came flush up to the property line. It was over an opening under the sidewalk that led into the basement under the barber-shop and gave light and air thereto. It was the custom of the owners, whenever they leased a storeroom, to deliver possession of the basement thereunder. Cooley testified that he bought the establishment from a Mrs. Sanborn, to whom the premises had been let under the written lease; that after the lease had been made to her, Mrs. Sanborn put him in possession of the storeroom; that afterward he asked the agent of the owners if the basement did not go with the storeroom, and that the agent said "Yes," and gave him the key. The agent for the hotel property testified that he knew the lease was assigned to Mr. Cooley; that he delivered the storeroom and basement to him; that Cooley asked him if the basement did not go with the lease; that he told Cooley it did, and gave him the key; and that whenever the owners of the building leased a storeroom they always delivered possession of the basement that is under such storeroom, without specifying the basement in the lease.

Immediately prior to the accident Mrs. Runyon and her cousin were on the north side of First Street, opposite the shoe-shining stand in front of Cooley's barber-shop. The cousin, desiring to have her shoes shined, crossed over to the shoe-shining stand, leading the way, while Mrs. Runyon followed, intending to wait for her cousin while the latter had her shoes shined. Without noticing the broken grating, Mrs. Runyon stepped into the opening made by the absence of the

two broken iron bars, and her right leg was jammed or crowded down between the remaining bars nearly to the knee.

[2] The record before us, as presented by the bill of exceptions, contains a part of the evidence, it appearing affirmatively therefrom that several witnesses, none of whose testimony is set forth, were sworn and testified. This being so, we very properly might affirm the judgment without any further discussion. When exceptions are taken to a nonsuit, or to a directed verdict, all the evidence necessarily becomes a part of the case. Such a ruling is based upon the entire evidence. It cannot be determined that the ruling was erroneous without an examination of all the evidence; for it may be that the error complained of was cured by the omitted evidence. However, we shall endeavor to dispose of the case on its merits, notwithstanding the incompleteness of the record, though the failure to include all the evidence in the bill of exceptions necessarily will compel us to resolve every material question of fact against appellants.

There are two crucial facts respecting which it cannot be said that the evidence before us is complete. They are: 1. Was the basement under Cooley's storeroom necessarily used with, or reasonably necessary to the enjoyment of, the storeroom as a barber-shop? and 2. Did the basement, as an independent and separate inclosure, include, as an integral part thereof, and separated from all other parts of the building, the excavation or space under the sidewalk over which the grating was constructed?

The written lease does not expressly mention the basement under Cooley's barber-shop. The language of the lease is: "That certain storeroom known and numbered as 212 West First Street, . . . said storeroom hereby leased being the room now occupied by the party of the second part. . . . The said storeroom is to be used by the party of the second part for the purpose of conducting a barber shop therein, for which said purpose it is now occupied by the party of the second part." [3] A lease of a part of a building passes with it, as an incident thereto, everything necessarily used with or reasonably necessary to the enjoyment of the part demised. (*Miller* v. *Fitzgerald Dry Goods Co.,* 62 Neb. 270, [86 N. W. 1078]; *Kitchen Bros. Hotel Co.* v. *Philbin,* 2 Neb. (Unof.) 340, [96 N. W. 487]; *Herpolsheimer* v. *Funke,* 1 Neb. (Unof.) 471,

[95 N. W. 688].)   **[4]**   The general rule is that where a store is leased, everything then in use for the store, as an incident or appurtenance, passes by the lease.  (*Hall* v. *Irvin,* 78 App. Div. 107, [79 N. Y. Supp. 614]; *Browning* v. *Dalesme,* 3 Sand. (N. Y.) 13.)   From the testimony to which reference already has been made, it may be inferred that the basement was necessarily used with, and was reasonably necessary to the use of the barber-shop occupied by Cooley. *A fortiori,* it may well be that the evidence that was introduced in the court *a quo,* but not brought up by the record on this appeal, showed that the basement necessarily was used with the barber-shop, and that, therefore, it passed by the lease as an incident or an appurtenance to the storeroom described in the written document itself.

Appellants claim that the excavation under the sidewalk, over which was the grating that caused the accident, was no part of the basement occupied by Cooley—that it was not so physically connected with that particular basement as to be an integral part thereof and of that basement only.   The agent for the property testified: "This basement under Mr. Cooley's store has no connection with or entrance into the hotel basement.   It is separate. . . . The grating out of which the bars were broken was over an opening that led into Mr. Cooley's basement."   From this it may be inferred that the basement under Cooley's store, shut off from every other basement by solid brick walls, included, as an integral part thereof, the space under the sidewalk over which the grating in question had been constructed, and that such excavation under the sidewalk was shut off from every other basement.   At any rate, the incomplete evidence before us does not conflict with this view.   Since every intendment must be indulged in favor of the regularity of the court's procedure, it will be presumed that if all the evidence were in the record it would support a state of facts sufficient to uphold the judgment.

**[5]**  For the foregoing reasons we must assume, as unavoidable hypotheses, that the basement under the leased storeroom included the excavation over which the grating was constructed, separated from every other basement; that the basement was reasonably necessary to the enjoyment of the leased storeroom or barber-shop, and that, therefore, it passed with

the lease as a necessary incident or appurtenance. Upon this state of facts—a state of facts that we necessarily must assume would be established if all the evidence were before us—respondents are not liable.

[6] The written lease, if the facts be as we have stated them, included the iron grating that permitted the entrance of light and air to Cooley's basement, and the tenant's covenant to keep in repair applied to it. (*Boston* v. *Gray*, 144 Mass. 53, [10 N. E. 509] ; *Rider* v. *Clark,* 132 Cal. 382, [64 Pac. 564].) The grating when originally constructed was not a nuisance *per se.* Nor was it, *per se,* a nuisance at the time when the lease was executed, though at that time one bar was broken; for the fact that one bar was out did not cause the contrivance to become a source of danger. [7] The abutting owner, whose title extends to the center of the street, may excavate a vault or cellar under the sidewalk. Such owner, with permission of the city authorities, express or implied—implied or inferred where, after a reasonable time. no objection has been made by the proper officials—may insert in the sidewalk, for the purpose of admitting light and air to the vault or cellar, an iron grating, or other similar device, if safely and properly constructed, and such contrivance in the sidewalk is not a nuisance *per se.* (*Rider* v. *Clark, supra; Morrison* v. *McAvoy,* 7 Cal. Unrep. 37, [70 Pac. 626] ; *Hirsch* v. *James S. Remick Co.,* 38 Cal. App. 764, [177 Pac. 876] ; *Fisher* v. *Thirkell,* 21 Mich. 1, [4 Am. Rep. 422].)

The original structure having been legal and in a safe condition when respondents leased the premises to their tenant, and the injuries having been received in consequence of the grating getting out of repair during the tenancy—the tenant and not the landlord being bound to repair—respondents are not liable as owners, or otherwise. [8] If the abutting property owner making the excavation and constructing the grating, coal-hole or other similar device in the sidewalk does so with the permission of the proper city authorities, and the work is not inherently, in its nature and character, a nuisance *per se,* the owner is liable only in the event that he fails to use ordinary care and diligence in constructing the grating or other similar contrivance and keeping it in such repair that it shall be as safe for the use of the public as any other part of the sidewalk. (*West Chicago Masonic Assn.* v. *Cohn,*

192 Ill. 210, [85 Am. St. Rep. 327, 55 L. R. A. 235, 61 N. E. 439].) **[9]** When the premises are in good repair at the time they are let, and the landlord, under the terms of the lease, is not bound to keep them in repair, the tenant in possession, and not the landlord, is liable for an injury resulting from a failure to repair the pavement in front of the premises. (*Lindstrom* v. *Pennsylvania Co.*, 212 Pa. 391, [61 Atl. 940]; *Fisher* v. *Thirkell, supra.*) The general rule is that it is the occupier, and he alone, to whom such responsibility *prima facie* attaches. (*Ahern* v. *Steele*, 115 N. Y. 203, [12 Am. St. Rep. 778, 5 L. R. A. 449, 22 N. E. 193]; *City of Lowell* v. *Spaulding*, 4 Cush. (Mass.) 277, [50 Am. Dec. 775].) To this general rule the following exceptions are recognized, and the owner of the leased premises may be made liable: 1. If the lease be one under which he, and not the tenant, is required to keep the premises in repair; 2. If the dangerous and defective condition by which the injury was occasioned existed when the premises were leased; 3. If that which occasioned the injury was, inherently, in its nature and character, a nuisance, and was upon the premises when the lease was executed. (*West Chicago Masonic Assn.* v. *Cohn, supra.*) The proof does not bring respondents within any of these exceptions to the general rule. The grating being safe at the date of the lease, the neglect which caused the injury to Mrs. Runyon was not that of respondents, but of their tenant Cooley, who had covenanted to keep the leased premises in repair.

It is contended that where the owner of a building is granted the privilege of excavating a vault under the sidewalk of a public street, and has constructed in the sidewalk an iron grating, coal-hole, or other similar device for the admission of light and air for the benefit of his premises, he assumes, by implication, the duty of keeping the sidewalk in as good condition and as safe for the public use as if the grating, coal-hole, or other like construction had never been made; that such duty is imposed by law for the public safety; and that, while the alienation of the entire premises, either permanently, as by deed, or temporarily, as by lease, will transfer the duty to the grantee or tenant, still the lease of a part only of the premises will not relieve the owner of the duty he owes to the public and cast the same upon the tenant of such leased part

of the entire premises, even though the opening in the sidewalk has no relation to any other portion of the building than that in possession of the tenant.  This view seems to have obtained the sanction of the New York court of appeals in the case of *Canandaigua* v. *Foster,* 156 N. Y. 354, [66 Am. St. Rep. 575, 41 L. R. A. 554, 50 N. E. 971].  Of this case the Illinois supreme court in *West Chicago Masonic Assn.* v. *Cohn,* 192 Ill. 210, [85 Am. St. Rep. 327, 55 L. R. A. 235, 61 N. E. 439], said: "Fowler, the owner and landlord, was not in possession, but the coal-hole had been constructed without the consent of the city, and constituted a nuisance, and Fowler let the premises with the nuisance upon them.  His case fell within one of the exceptions to the general rule hereinbefore mentioned as recognized in this jurisdiction."  The New York courts always have held the owner to a stricter accountability than is consistent with the weight of authority.  (*Fisher* v. *Thirkell,* 21 Mich. 1, [4 Am. Rep. 422].)  It is conceded by the courts of that state that the owner and landlord who has made the excavation under the sidewalk and constructed the iron grating, or other similar contrivance, may divest himself of all responsibility by demising or leasing the premises as a whole.  If an owner who has constructed a contrivance that becomes a source of danger and a nuisance may divest himself of future responsibility under any circumstances whatever, as, for example, by demising the entire building, we fail to perceive why he may not equally divest himself of such responsibility by exacting from his lessee a covenant to keep the leased premises in repair, even though the premises so leased be but a part of the whole building, provided the contrivance in the sidewalk be used exclusively for the benefit of and in connection with that part of the building which is leased.  The abutting owner is liable only in the event that he fails to use ordinary care in the original construction of the iron grating, or other similar device in the sidewalk, or in keeping it in such repair that it shall be as safe for the use of the public as any other part of the sidewalk.  [10] If, as originally constructed, the contrivance is safe and not a nuisance *per se,* and if, at the date of the execution of the lease of the part of the premises to which it is solely appurtenant, it is safe and not, in its nature and character, a nuisance, the owner exercises ordinary care to keep it in such condition

if he exacts from his lessee a covenant to make all necessary repairs. The true rule—the rule that has the sanction of authority and reason—is stated by the Illinois supreme court as follows: "If the coal-hole and vault were constructed and are used for the benefit of the entire premises, the leasing of a portion, only, of the premises would not absolve the owner from his duty to use ordinary care to keep the coal-hole and the covering thereto in a good and safe condition; but if the vault into which the coal-hole opens has no connection with any other part of the building than the basement leased to the tenant, and no benefit inures from it to any other portion of the premises, and the tenant, as against the owner, has, and is entitled to have, exclusive possession and control of the basement, coal-hole, and vault, and has covenanted to keep the same in good repair, then the case should be regarded as within the operation of the general rule that the occupant of the premises, and not the owner thereof, is responsible for injuries received in consequence of a failure to keep the premises in repair." (*West Chicago Masonic Assn.* v. *Cohn, supra.*)

[11]    We have assumed in our discussion of the case that Mrs. Runyon was one of the general public using the sidewalk, and was not a guest or invitee of the tenant in possession. The rule is that one who, upon the express or implied invitation of the tenant, enters or is proceeding to enter upon the leased premises, is an invitee, and as such stands in the shoes of the tenant, and therefore may not recover if the tenant cannot; and that the tenant may not recover if the burden of repairing rests upon him. (*Mackey* v. *Lonergan*, 221 Mass. 296, [L. R. A. 1916F, 1098, 108 N. E. 1062]; *Leaux* v. *New York*, 87 App. Div. 398, [84 N. Y. Supp. 514].) In *Canandaigua* v. *Foster*, 156 N. Y. 354, [66 Am. St. Rep. 575, 41 L. R. A. 554, 50 N. E. 971], the general rule is stated: "It must be further conceded that if the store was in proper condition at the beginning of the term, the owner was not bound to repair it for the protection of those who, upon the express or implied invitation of the tenant, might enter it for the transaction of business or any other purpose." Mrs. Runyon evidently proceeded to enter the space occupied by the bootblack-stand assuming that she would be permitted by the subtenant to enter upon and remain on his premises as a guest or invitee while her cousin was having her shoes shined.

[12]   Appellants complain that the court erred in refusing to allow them to show that, after the accident, respondents, as owners, made and paid for repairs to the broken grating. Voluntary repair by a landlord of a defect in the demised premises after an injury resulting therefrom is not an admission of liability. (*Kearines* v. *Cullen,* 183 Mass. 298, [67 N. E. 243].)   However, as to this and all other complaints made by appellants respecting the admission or rejection of evidence, it may be said that every intendment is in favor of the correctness and regularity of the proceedings below, and that, since appellants have not brought up all the evidence for review, we will, if necessary, infer that the evidence not brought up cured the errors, if any there were.   (*Barlow* v. *Barnes,* 172 Cal. 98, [155 Pac. 457].)

Appeal from the order denying the motion for a new trial dismissed.

Judgment affirmed.

Sloane, J., and Thomas, J., concurred.