[Civ. No. 1899. Third Appellate District.—November 26, 1918.]

PHILLIP HIRSCH, as Executor, etc., Respondent, v. JAMES S. REMICK COMPANY (a Copartnership), et al., Appellants.

NEGLIGENCE—ACTION FOR DEATH—PLEADING.—A complaint in an action for damages for death is fatally defective which contains no allegation that the deceased left heirs.

ID.—OMISSION CURED BY EVIDENCE.—The omission in the pleading in such case is cured by the introduction without objection of testimony as to the heirs of the deceased.

ID.—FALL THROUGH SIDEWALK OPENING — BASEMENT ELEVATOR—IN-
STRUCTIONS—MAINTENANCE NOT NEGLIGENCE PER SE.—In an action
for damages for death caused by falling through the shaft of a
basement elevator in a city sidewalk it was error to instruct the
jury that the maintenance of the opening on the sidewalk was
negligence *per se.*

APPEAL from a judgment of the Superior Court of
Sacramento County.  H. D. Burroughs, Judge Presiding.

The facts are stated in the opinion of the court.

C. E. McLaughlin and C. P. McLaughlin, for Appellants.

Martin I. Welsh and Ralph W. Smith, for Respondent.

CHIPMAN, P. J.—The action is for the recovery of dam-
ages arising from the alleged negligence of defendants
whereby plaintiff's testate was injured.

It is alleged in the complaint that defendants were, on
December 24, 1915, conducting a store at the southwest corner
of Eleventh and J Streets, Sacramento; that, on the Eleventh
Street front of said store and under the pavement or side-
walk defendants maintained an area or basement, and, for
the purpose of lowering and raising articles of merchandise to
and from the floor of said area to the surface of the sidewalk,
defendants constructed and used a shaft in which was in-
stalled an elevator.  Two ordinances of the city of Sacra-
mento—Nos. 346 and 716—are pleaded as the basis for the
averment that defendants unlawfully maintained said shaft.
"That the sidewalk in front of the said store of defendants on
Eleventh Street, in the city of Sacramento, county of Sacra-
mento, state of California, is some fifteen feet in width.  That
at a point on the said sidewalk about sixty feet southerly of
the southwest corner of the curb at Eleventh and J Streets,
and about eight feet to the east of the most easterly outer
wall of the building occupied during all of said times by de-
fendants' store, and about three feet west of the outer or
eastern edge of the said sidewalk, the defendants did, during
all the times herein mentioned, negligently, imprudently, and
unlawfully use and maintain in the said sidewalk at the point
aforesaid, above the shaft of the said elevator, the point being
at a distance of more than seven feet to the east of the most

outerly easterly wall of defendants' store, a rectangular hole or opening some five feet square and during all of said times herein mentioned failed and neglected to construct, maintain, equip over, about or around the said rectangular hole or opening any barrier, fence, light, rail, protector or warning of any kind whatever. That on the twenty-fourth day of December, 1915, in the night-time of said day, at or about the hour of 5:30 o'clock P. M. Markus Hirsch, sometimes known as M. Hirsch, while proceeding as a pedestrian walking in a northerly direction, upon the sidewalk in front of the store of defendants on Eleventh Street, the city of Sacramento, state of California, while so using the sidewalk as aforesaid, he fell into the said rectangular hole or opening in said sidewalk, to the floor of the open area, basement and cellar below, fatally injuring the said Markus Hirsch, sometimes known as M. Hirsch, from which injuries he died on the twenty-fourth day of December, 1915, all to the loss and damage of this plaintiff in the sum of ten thousand dollars.''

A general and special demurrer was overruled and defendants answered denying the accusatory averments of the complaint; alleged that ''said shaft or opening in the sidewalk on Eleventh Street was guarded by perpendicular iron barriers twenty-five inches in height above the sidewalk on the northerly and southerly sides of said shaft or opening and on the east and west ends of said shaft or opening by iron rods; that at all times during said use on said day said barriers were visible to any person walking northerly or southerly on Eleventh Street, for a distance of more than one hundred fifty feet''; that deceased well knew of the existence of said shaft and the purpose for which it was used, and that by the exercise of ordinary care he could have seen and have avoided said shaft, and could have used the sidewalk between said shaft and the wall of said store ''which was clear of all obstructions for a width of about seven feet''; that on said December 24, 1915, and a few minutes before he was injured, he passed southerly along Eleventh Street between said opening and the wall of said store and then and there observed and knew that said shaft was being used by defendants and the purpose for which it was being used and observed the said iron doors forming a barrier twenty-five inches in height above the sidewalk and observed the said clear space of seven feet between said shaft and said building; that the injury and death of de-

ceased alleged in the complaint were caused by his own neg-
ligence and want of ordinary care and could have been
avoided had he exercised ordinary care by the use of said open
space next to the wall of said building; denied that deceased
was injured at 5:30 o'clock P. M. of said day or at any hour
later than 5 o'clock P. M.

The cause was tried by the court with a jury and plaintiff
had the verdict. Judgment was accordingly entered, from
which defendants appeal.

Defendants' first point is that the complaint is fatally de-
fective in failing to allege that the deceased left any heirs.
The general demurrer should have been sustained on this
ground, for it is well settled that the action runs to the heirs
only and that a recovery is for their benefit and not for the
benefit of the estate of the deceased. (*Munro* v. *Dredging etc.
Co.,* 84 Cal. 515, [18 Am. St. Rep. 248, 24 Pac. 303]; *Ruiz* v.
*Santa Barbara Gas etc. Co.,* 164 Cal. 188, 192, [128 Pac. 330].)
It appears, however, from the record that, without objection,
plaintiff introduced testimony showing that the deceased left
heirs, naming them. Under similar circumstances we held, in
*Slaughter* v. *Goldberg, Bowen & Co.,* 26 Cal. App. 318, [147
Pac. 90], that the admission of evidence without objection
cured the omission of the allegation as to the existence of
heirs. We did not, as appellants seem to read the opinion,
rest the decision on the fact that the omission was cured by
the answer. A petition to the supreme court for a hearing of
the case in that court was filed and especial attention given
in the petition to the point now here. The petition was de-
nied, and we must assume that the supreme court concurred
in the view of the question taken by this court. The point
was referred to in *Boyle* v. *Coast Improvement Co.,* 27 Cal.
App. 714, [151 Pac. 25], and the decision in the Slaughter
case was affirmed. A hearing in the supreme court in the
Boyle case was also denied. We gave the question our best
attention in *Slaughter* v. *Goldberg, Bowen & Co.,* and, not-
withstanding the able argument now presented by the learned
counsel for the defendants we must adhere to our decision
heretofore rendered. (See *Noakes* v. *City of Los Angeles,*
179 Cal. 38, [175 Pac. 409].)

The sidewalk on Eleventh Street is fourteen feet wide. In
this sidewalk two feet from the curb is the opening into which
deceased fell. The opening is five feet east and west and four

feet north and south and is covered by two iron doors flush with the sidewalk when in place. When open, these iron doors, one on each side, twenty-five inches in height, stand upright and are held in position by an iron rod across the west side of the shaft. An elevator is operated in this shaft to carry goods to and from the basement or area under the sidewalk. At the time of the accident the elevator platform was at the bottom of the shaft and it was not for the moment then being used. There was an electrically lighted electrolier near the curb twenty-seven feet north of this opening and another similar one seventy-four feet south of this shaft. They had, however, been dimmed by coloring the burners so as to diminish the radiance of the lamps one-third. It was a damp, foggy evening and growing dark. The sun set on that day at 4:35 P. M. Deceased left his store on J Street between Tenth and Eleventh Streets at about 5 o'clock that evening to purchase some coffee at a store on the corner of Eleventh and K Streets. He passed this shaft in going and was met on his way back by a witness between the corner of Eleventh and K and the opening. This was about 5:15 or 5:30 P. M. Continuing his course north, deceased fell into this shaft and received injuries from which he died during the same night. No witness saw him fall into the shaft.

It is contended by respondent that said shaft was constructed and is being used in violation of the ordinances above referred to, and hence was a nuisance and constituted negligence *per se*. This contention is stoutly contested by defendants, thus presenting an important and perhaps the principal question in the case.

The court instructed the jury as follows: "When the owners or occupants of property abutting on the public highway do anything or continue the use of anything that will obstruct the free passage of the public upon such highway, street or sidewalk, such parties are maintaining a nuisance if they maintain the same contrary to the provisions of the law regarding the same. In this connection I will read to you the ordinances of the city of Sacramento relating to the regulating and use of sidewalks. [Here reads ordinances Nos. 346 and 716.]" Then follows an instruction to the effect that if the jury find that defendants were using or maintaining "the alleged area, basement window or cellarway in the sidewalk," and that the said opening "was not kept or maintained or

continued in use in accordance with the terms of the ordinances just read," the defendants "were guilty of maintaining a nuisance, and the defendants would be liable to persons who sustained injuries as the proximate result of the maintenance of the said nuisance, if such injuries were sustained by said party when he was in the exercise of ordinary care."

The court gave the following instruction: "The court instructs the jury that if you find from the evidence that the defendants were maintaining an opening in the said sidewalk in which the deceased fell, and that in so maintaining the same they were violating the provisions of the said ordinances of the city of Sacramento, and such violation of the ordinances was the proximate cause of the decedent's death, and that the decedent at such time was in the exercise of ordinary care, it is your duty to find for the plaintiff."

Defendants requested an instruction which set forth the uncontradicted facts as to the place where the shaft was constructed and the manner of its construction, and stated that if the jury should find the facts thus set forth to be true, then "the maintenance and use of said opening and said iron doors was not in and of itself a nuisance, or in violation of the ordinances introduced in evidence in this case." The court refused to give this instruction. Another instruction requested by defendants was refused, reading as follows: "If you find from the evidence that the opening in the sidewalk through which deceased fell was used by defendants for business purposes, and that the iron doors when closed constitute part of the pavement, and when opened constitute a guard or railing on each side of the opening, then you are instructed that such iron doors and their use are not forbidden by the ordinances introduced in evidence and did not constitute a nuisance." Another instruction requested by defendants was refused which instructed the jury "that the iron doors and opening maintained and used by defendants were not forbidden by said ordinances."

"There is no rule of law better established than that the construction of written instruments is a matter of law for the court, and not of fact by the jury, unless when the meaning and construction are doubtful and depend upon extrinsic evidence." (*Aguirre* v. *Alexander*, 58 Cal. 30.) "It is error for the court to submit to a jury the question of the legal

38 Cal. App.—49

effect of written documents offered in evidence during the trial.'' (*Carpentier* v. *Thirston*, 24 Cal. 269, 285.)

It was the contention of respondent at the trial and is his contention here that the construction and maintenance of this opening or shaft was unlawful because in violation of the ordinances pleaded; and that this unlawfulness did not consist in the character of the shaft or opening, but in its position; that the ordinance authorized only the opening or stairway next to the building. It seems to us that when the instructions given and refused are considered, the court not only left the question of the construction to be put upon the ordinances to the jury, but conveyed the impression to the jury that the shaft or opening in question was in violation of the ordinances and hence a nuisance.

Section 1 of ordinance No. 346 provides for the construction of a passageway to the cellar or basement next to the building, in doing which not more than four feet of the sidewalk next to the building shall be used and must be inclosed by ''a strong iron railing,'' and in a manner to prevent accident to foot-passengers.'' Section 2 authorizes business firms ''to occupy three feet of the sidewalk from the building line, for the purpose of exhibiting their wares during business hours.'' Then follows the proviso, ''that merchants or persons having occasion to receive or deliver goods may use such sidewalk for the period not to exceed ten hours in the daytime for the purpose of receiving and discharging such goods; and provided further that a space of six feet in width shall at all times be kept clear for the accommodation of persons passing.'' Section 3 allowed a space of four feet of the sidewalk for stairway entrances to the first floor of any building erected prior to June 1, 1894.

Ordinance No. 716 amends section 2 of ordinance No. 346 by providing for the space of three feet next to the building for accommodating bicycles and also for space at the outer edge of the sidewalk for bulletin boards for managers of theaters and newspapers. The remaining portion of section 2 is the same as in ordinance No. 346; namely, ''that merchants having occasion to receive or deliver goods, may use the sidewalk in front of the premises occupied by them for a period of not exceeding ten hours in the daytime for the purpose of receiving or delivering such goods; . . . and provided

further, that a space of six feet in width shall at all times be kept clear for the accommodation of persons passing."

The provisions of the ordinances relating to receiving and delivering goods authorized the use of the sidewalk next to the curb for that purpose. It has been held that the abutting owner, whose rights extend to the center of the street, may excavate a vault or cellar under the sidewalk. (Elliott on Roads and Streets, sec. 690, and cases cited.) Where the area under the sidewalk is utilized for storage purposes and to receive and discharge goods, which is quite common in cities and in towns of considerable importance, the universal custom is to effect those objects by constructing and using an opening in the sidewalk near the curb, just such as was constructed and used in the present case.

The evidence was that the iron doors used by defendants were of standard size and set in the pavement in the customary manner and when closed formed a part of the sidewalk. In itself it was not a nuisance and did not constitute negligence *per se*. The supreme court, in *Rider* v. *Clark*, 132 Cal. 382, 385, [64 Pac. 564], speaking of just such an opening and covering as here, said: "It is generally the usage and custom to allow openings to be made in the sidewalks of cities in order to obtain entrance into the basement, such openings and the coverings thereof being subject to proper municipal regulation." (Citing cases, and 2 Dillon on Municipal Corporations, sec. 699.)

*Morrison* v. *McAvoy*, 7 Cal. Unrep. 37, [70 Pac. 626], was a case where an ordinance of the city of Oakland was drawn in question. In that case an opening in the sidewalk near the curb was made as in this case and for like purposes, the only difference being that the iron doors were sixteen inches in height when open, whereas in the present case they were twenty-five inches and the area underneath the sidewalk was utilized by stairs in the opening instead of an elevator as here. The ordinance provided that "no person shall . . . so occupy or obstruct any sidewalks as to interfere with the convenient use of the same by all passengers"; also that "every person shall keep around every . . . flight of stairs descending from the sidewalk to the basement owned or occupied by him, a fence or railing at least three feet high." Plaintiff, walking along the sidewalk in the daytime, fell into this opening and was injured. She brought the action, alleging a

violation of the ordinance. A demurrer to the complaint was sustained by the lower court and the judgment on appeal was affirmed. Said the court: "The iron doors appear not to have been an obstruction when closed, and no defect in the manner of their construction is alleged, and it is averred that they constituted part of the pavement when closed. Such doors, as means of ingress and egress to and from the basement of buildings in towns and cities, are not unusual, and do not constitute a nuisance *per se,* and are not forbidden by the ordinance pleaded." (Citing *Rider* v. *Clark,* 132 Cal. 382, [64 Pac. 564].) Speaking further of the situation, the court said: "The first part of the ordinance above quoted was not infringed by the construction of the doors, for they formed part of the sidewalk, and were safe when closed, so far as is alleged. The second portion of the ordinance refers to open stairways as they are sometimes constructed next to the buildings or next to the curb, and where the protection around the stairs is by a railing, in which case the protection or railing must be three feet high, and is permanent, and is the only protection required. The iron door openings in the present case are entirely different, and the usual protection to pedestrians are the sides of the door, as was the case of *Rider* v. *Clark.* The complaint seems to proceed upon the theory that the opening, with the doors, the stairs, and the cellar, were all unauthorized, and in violation of the ordinance, and together constituted a nuisance. There is nothing to show that the use of the basement by these means was unauthorized, except the ordinance, and this does not go so far." In further considering the case the court said: "If there had been a distinct allegation—which there is not—that the sides of the door were not high enough to offer reasonable protection to footmen in the daytime, or had alleged clearly that the doors were opened out and laid flat on the pavement, offering no protection, there would have been a different case presented." Again, "plaintiff might have presented the distinct issue, on which she would have the right to be heard, that the iron doors, when open and standing upright, was a negligent and dangerous use made of the opening to the basement, irrespective of the ordinance. She evaded this issue, and relied on the prohibitions of the ordinance, which, as we have seen, does not cover her case."

In the present case, while general negligence was in part relied upon, and it was not necessary that the specific acts constituting such negligence should be alleged, this issue is entirely distinct from the issue arising from the claim that the opening in the sidewalk constituted a nuisance *per se.* To hold that such use of the sidewalk is in itself a nuisance, importing negligence *per se,* would be a serious infringement of a right universally exercised and having the sanction of long and well-recognized usage by the owners of business houses on lots abutting on public streets. That the city council was aware of this usage when it enacted these ordinances cannot be doubted. It is very clear that the ordinances in question do not in terms forbid such use. The only regulation or restriction coupled with the use as given is that it shall not exceed ten hours in the daytime and that a space of six feet in width shall at all times be kept clear for the accommodation of persons passing. In the present case it appeared that there was a clear space of seven feet between the opening and the store building.

We have considered this question quite apart from the further question of general negligence involved in the issues arising out of the circumstances and facts relating to the manner in which the shaft and elevator were being used at the time of the accident, and the alleged negligence of defendants in connection therewith.

Considering the condition of the weather, the lateness of the hour in the day, that there was no one at the opening or using it at the time of the accident, and that the elevator was at the bottom of the shaft, the question of negligence imputed to defendants, as well as the question of the contributory negligence of deceased, claimed by defendants, was for the jury.

If we could say that the verdict rested alone on defendants' negligence in leaving the shaft open under the circumstances shown, there would be no ground for disturbing the judgment. But as we think the jury were given to understand that this opening in the sidewalk was a nuisance and constituted negligence *per se,* we cannot say but that this view of the situation controlled the verdict and relieved the jury from considering the question of defendants' negligence as a question of fact.

We think it was prejudicial error to send the case to the jury with instructions in effect implying that this opening on

the sidewalk constituted a nuisance and in refusing to instruct them as to the meaning of the ordinances in this regard.

The judgment is reversed.

Burnett, J., and Hart, J., concurred.