[Civ. No. 6128.   Second Appellate District, Division One.—December 26, 1930.]

FRED MULDER, Respondent, v. CITY OF LOS ANGELES (a Municipal Corporation), Appellant.

Jess E. Stephens and Erwin P. Werner, City Attorneys, and Frederick Von Schrader, Assistant City Attorney, for Appellant.

S. C. Schaefer for Respondent.

CONREY, P. J.—From the findings of the trial court the following facts appear: The plaintiff was the owner of lot one in tract No. 2138, at San Pedro, in the City of Los Angeles. Lot one is on the south side of Third Street, in the block next east of Cabrillo Street. The intersection

of Second and Cabrillo Streets is northwesterly from plaintiff's lot, and is on ground higher than plaintiff's lot, so that the surface flow of water runs southeasterly from said Third Street intersection, down through a ravine in which plaintiff's land is located. At the time of said injury (on or about March 1, 1926), and during a usual and common rainstorm, dirt, sand and debris were washed down from and off of Second Street and said Second Street intersection, and were deposited upon plaintiff's property, with resultant damage, so that the dwelling-house of plaintiff was made uninhabitable. The destruction of plaintiff's property was caused by negligence of the defendant, in that the defendant did not properly make, keep or maintain the public streets, and did not properly or adequately protect the same. Prior to said rainstorm the defendant city had raised and changed the grade of Second Street, and had made an embankment across Cabrillo Street at Second, and thereby had interfered with the natural flow of storm waters, which theretofore did not reach the plaintiff's land, and also by the same means of interference the defendant caused said storm waters, with their burden of dirt, sand and debris, to be cast upon plaintiff's property.

The complaint alleged, and the answer did not deny, that Second and Cabrillo Streets are public highways, and that each of them is maintained, improved and controlled by defendant the City of Los Angeles; except that the defendant, in its separate and affirmative defense, alleged that defendant has never improved Second Street at its intersection with Cabrillo. It is conceded that the work done at that place was not done by the city in connection with any formal street improvement proceeding. From the evidence on which plaintiff relies, it appears that about one year before the rainstorm of March 1, 1926, the board of public works had granted to one Butterfield permission to make certain fills, in accordance with a report and recommendation received from the city engineer. The work thus authorized included the filling of Second Street at Cabrillo "an additional ten feet". The engineer's report did not recommend and the board did not require that in connection with the making of this fill and embankment, any precaution or measure should be provided, to take care of the storm surface waters. The fill, as made by Butterfield, was

composed of sea sand, covered with adobe. When the storm came, of March 1, 1926, the storm water collected behind said fill, accumulating until it overflowed, so that great quantities of sand and debris were carried down, filling the land below, including plaintiff's lot, and greatly damaging the plaintiff's house.

From the judgment entered awarding damages to plaintiff, defendant appeals and contends that on the facts shown, and for six separately stated reasons, no municipal liability is cast upon it. The second and third points rest upon the assumption that the damage was caused by flooding from the natural run-off of the surface waters. But the court found, upon sufficient evidence, that the direction and quantity of the natural run-off had been disturbed and changed by the acts of the defendant. The fourth point in substance is that the storm of March 1, 1926, was of an extraordinary and unprecedented character which the defendant was not bound to anticipate. But the court found, on sufficient evidence, that said storm was "a usual and common rainstorm".

The first and fifth points as stated in appellant's brief are that the city is not liable for the acts of a permittee; and that the granting of the permit by the board of public works was a tort, for which the municipality is not liable.

Article XXIII of the charter of the City of Los Angeles provides for a department of public works, to be under the management and control of the board of public works, which board (sec. 231) "shall have all the powers and perform all the duties that are now or may hereafter be conferred or imposed by law upon the street superintendent". Also it is provided (sec. 233, subd. 1), that said board "shall have and exercise all the powers and duties possessed by the city under this charter, and all the powers and duties that are now or may hereafter be imposed by general laws of the state upon the council or any board or officer of the city under special assessment, as well as all other proceedings relating to": . . . (here follow designations of sundry special proceedings concerned with contracts for public improvements of streets . . . crossings . . . public places and rights of way and property belonging to the city). It is further provided (sec. 234), that "the Board of Public Works shall have charge, superintendence, and control, except

as otherwise specifically provided in this charter: Of the construction and maintenance of all streets and other places and property enumerated in subdivision 1 of section 233 of this charter; of all work and improvement in, on, over or under all such streets, places and property; of the design, construction and maintenance of all sanitary and storm sewers and drains of the city, and all connections therewith.'' Our attention has not been directed to any exceptions provided in the charter, which would modify or prevent the application of the foregoing provisions of section 234 to the proceedings under review in this case. The board of public works was authorized to exercise on behalf of the city its power and control over these public streets and works of improvement therein. It had authority to permit street work to be done, particularly when recommended by the city engineer, not only under special assessment proceedings or city contracts for compensation, but where the same was proposed to be done without cost to the city or adjacent property owners. But in such case we are of the opinion that the duty of the city to make reasonable provision against damage to private persons or property arising out of such work, and its liability for failure to use reasonable care therein, was not different from the duty and liability which would be imposed where the work was done directly by the city through its street work employees under direction and control of the board of public works.

We adopt as a correct statement of law the following text-book quotation found in appellant's brief: ''So, where a city licenses a person to do an act dangerous in itself, or if it has, or ought to have, notice that its licensee has acted in a negligent manner and left its streets in an unsafe and a dangerous condition, it will be responsible therefor. But with these exceptions, it is not, ordinarily, liable for the acts of its licensees. While a municipal corporation is not liable in ordinary cases where it rightfully licenses third persons to use its streets, still, it cannot, by a license, abdicate its powers or surrender its duty, and it remains bound to exercise a general supervisory duty. It is not, however, liable for the acts of its licensees unless it is negligent in respect to its own duty, and it is, therefore, usually necessary, in order to charge the municipality, to show much more than negligence on the part of its licensee.''

(2 Elliott on Roads and Streets, 4th ed. (1926), p. 1053, sec. 816.) It is worthy of note that in the instant case the license or permission was not merely for some special use of the street as an incident to some private interest of the licensee, but was a permission granted to make changes in the street itself, and so became a part of the action of the city in relation to street construction work.

On the facts shown by the evidence in the case at bar it was the duty of the city through its department of public works, when it elected to permit the work in question to be done by Butterfield, to maintain over his work such supervision as would reasonably guard against any negligence which would leave the street in an unsafe and dangerous condition. The city was not authorized to abdicate its powers or surrender to a private person its duty to exercise proper supervision of the work which it permitted to be done.

By statute it is provided that municipalities shall be liable for injuries to persons and property resulting from the dangerous or defective condition of public streets, in all cases where the governing or managing board or officer having authority to remedy such condition, had knowledge or notice of the defective or dangerous condition, and failed or neglected, for a reasonable time after acquiring such knowledge or receiving such notice, to remedy such condition, or to take such action as may be reasonably necessary to protect the public against such dangerous or defective condition. (Stats. 1923, p. 675; Deering's Gen. Laws, 1923 ed., Act 5619.) The board of works knew that this work was to be done, as requested and permitted in accordance with the recommendation of the city engineer, and knew that said recommendation did not contain any provision for protection of property in the ravine, against damage which reasonably might have been expected to result from the work as proposed to be done. Such knowledge, in view of the physical situation of the streets and adjacent property, was equivalent to notice of the dangerous condition which would be created by the proposed changes if permitted to be done without some provision for suitable drainage. To hold otherwise would be to presume that the board had the right to act without even attempting to exercise its

intelligence in passing upon a subject of substantial importance.

. Generally, on the subject of municipal liability for damages in actions of this character, we refer to the opinion of this court in *Dick* v. *City of Los Angeles,* 34 Cal. App. 724 [168 Pac. 703].

█ Finally, it is contended by appellant that because the control and improvement of public streets is "a municipal affair", and because there is no charter provision or ordinance of the city creating liability for such negligence as was shown in this case, therefore that there is no legal foundation for the judgment. There is, we may assume, no doubt that the matter of improving streets is a municipal affair, upon which the charter of the city, in so far as it speaks, is paramount to general laws. (*Civic Center Assn.* v. *Railroad Com.,* 175 Cal. 441, 445 [166 Pac. 351].) Whether the city could by charter thus exempt itself from liability for negligence, we are not now called upon to determine. But even if the city by its charter could divest itself of subjection to the general law of liability for negligence in relation to street improvements, we are not aware of any provision in the charter, whereby the City of Los Angeles has attempted to exempt itself from the general law in relation to such liability.

The judgment is affirmed.

Houser, J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 12, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 19, 1931.