[S. F. No. 19977.   In Bank.   Oct. 24, 1958.]

CITY AND COUNTY OF SAN FRANCISCO, Appellant, v.
HO SING et al., Respondents.

Dion R. Holm, City Attorney, and George E. Baglin, Deputy City Attorney, for Appellant.

Bronson, Bronson & McKinnon and Frank E. Farrella for Respondents.

CARTER, J.—This is an appeal by the city and county of San Francisco, a municipal corporation, from a judgment after defendants', Ho Sing and Ho Lum Shee, demurrer to its complaint had been sustained without leave to amend.

Mr. and Mrs. Ho purchased a building in San Francisco. Their predecessors in title had installed a sidewalk skylight in front of the building. This skylight was over a basement which was maintained by defendants Ho. During the course of defendants' possession of the building, the sidewalk skylight developed a crack two inches wide and 18 inches long. On August 24, 1952, one Mrs. Wagner tripped because of said crack and fell, breaking her hip. Mr. and Mrs. Wagner sued both the city and county of San Francisco and Mr. and Mrs. Ho for damages resulting therefrom (*Wagner* v. *City & County of San Francisco et al., No. 423562*) and recovered

a final judgment against plaintiff city and defendants Ho in a total amount of $15,000 plus interest and costs. Plaintiff city paid Mrs. Wagner the sum of $5,000 plus $102.03 costs. Defendants paid Mrs. Wagner the sum of $10,000.

Plaintiff, in bringing this action, seeks to compel defendants to indemnify it in the sum of $5,258.87 ($5,000 plus costs and interest at 7%). As heretofore noted, the trial court sustained defendants' demurrer to plaintiff's complaint without leave to amend.

The only question involved is one of first impression in this state and may be stated as follows: Where an adjoining property owner for the exclusive benefit of his own property places in a public street or sidewalk some artificial structure and a city is compelled to pay compensation in damages to a member of the public injured thereby may the city recover the amount so paid from the property owner by way of indemnity?

This question was specifically left open in *Peters* v. *City & County of San Francisco,* 41 Cal.2d 419, 430 [260 P.2d 55], where we said: "We are not presented with the problem whether the city might have a right over against the Duques in the event it pays the judgment and the jury returns a verdict against the property owners on a new trial, and nothing we say here should be taken as indicating our views on that matter." Both sides argue, however, that from certain statements made in the Peters case, there is, or is not, a right over against the property owner in the case at bar.

In the Peters case the plaintiff brought suit against both the city and the Duques, as property owners, for damages sustained by her from a fall occasioned by a ramp or slope extending from a building maintained by the Duques and which extended across the sidewalk and caused a depression therein. The jury found for the plaintiff against the city but against the plaintiff with respect to the Duques' liability. On appeal, we affirmed the judgment against the city and reversed that portion which exonerated defendant Duque from liability.

We held that: (1) "The rule is that an abutting landowner may be held liable for the dangerous condition of portions of the public sidewalk which have been altered or constructed for the benefit of his property and which serve a use independent of and apart from the ordinary and accustomed use for which sidewalks are designed"; (2) "The duty to maintain portions of a sidewalk which have

been altered for the benefit of the property runs with the land, and a property owner cannot avoid liability on the ground that the condition was created by or at the request of his predecessors in title''; ▉ (3) "The city is under a duty to keep sidewalks in safe condition, it is directly liable to pedestrians for failing to correct a dangerous condition of which it had notice, and it is not relieved of its responsibility in this regard merely because the condition was created or maintained by a property owner who might also be liable to pedestrians for injuries resulting therefrom''; and ▉ (4) *"With regard to persons who are injured by such a condition, the city and the landowner are joint or concurrent tort feasors; each is directly liable for his own wrong and each may be held liable for the entire damage suffered.''* (Emphasis added; *Peters* v. *City & County of San Francisco,* 41 Cal.2d 419, 423, 427, 429 [260 P.2d 55], and cases there cited.)

From the emphasized portion (4) set forth above, defendants argue that since the abutting property owner and the city are joint, or concurrent, tortfeasors, the long established rule in this state against contribution between joint tortfeasors applies. The city, on the other hand, argues that this is not a question of *contribution* but of *indemnity*. ▉ We said in the Peters case that ''Even if such a right to contribution or indemnity were recognized, however, it would not mean, as asserted by the city, that its liability to pedestrians is merely dependent or derivative from that of the landowner and not joint or direct. ▉ As noted above, the rule against contribution between joint tort feasors admits of some exceptions, and a *right of indemnification may arise as a result of contract or equitable considerations* and is not restricted to situations involving a wholly vicarious liability, such as where a master has paid a judgment for damages resulting from the voluntary act of his servant.'' (41 Cal.2d 419, 430, 431.) The city contends that when an abutting landowner makes an unusual use of the public streets for his own private benefit it is with the permission, either express or implied, of the municipality; that such permission carries with it an implied condition that the landowner will exercise due care for the safety of the public and that it will hold the city harmless for any damages occasioned by the lack of due care. In other words, indemnity, as distinguished from contribution, exists because of some special relationship existing between the two tortfeasors and the entire loss is

shifted to the one bound to indemnify. (Prosser on Torts, 2d ed., § 46, p. 249.) In *Runyon* v. *City of Los Angeles*, 40 Cal.App. 383, 389 [180 P. 837], it was held: ''The abutting owner, whose title extends to the center of the street, may excavate a vault or cellar under the sidewalk. Such owner, with permission of the city authorities, express or implied— implied or inferred where, after a reasonable time, no objection has been made by the proper officials—may insert in the sidewalk, for the purpose of admitting light and air to the vault or cellar, an iron grating, or other similar device, if safely and properly constructed, and such contrivance in the sidewalk is not a nuisance *per se.* (*Rider* v. *Clark,* [132 Cal. 382 (64 P. 564)] *supra*; *Morrison* v. *Avoy*, 7 Cal. Unrep. 37 [70 P. 626]; *Hirsch* v. *James S. Remick Co.*, 38 Cal.App. 764 [177 P. 876]; *Fisher* v. *Thirkell*, 21 Mich. 1 [4 Am.Rep. 422].)''

### The City's Argument

It is the position of the city that in the absence of conflict with the constitutional or statutory law of this state, the common law prevails (Civ. Code, § 22.2; *Cole* v. *Rush*, 45 Cal.2d 345, 355 [289 P.2d 450, 54 A.L.R.2d 1137]) and that the common law is consistent throughout the United States that indemnity is allowed in such a situation as we have here.

The city cites many cases from out-of-state courts in which indemnity has been allowed. The theories relied on by such courts have differed as has been heretofore noted by us in the Peters case. We said there: ''The opinions in those cases, however, recognize that the city has an independent duty to correct dangerous conditions of which it has notice, regardless of who created them, and the term 'secondary' is not used therein to indicate that the city is merely liable vicariously for the negligence of the landowner. Instead, it appears that the term is used as a means of indicating that, in the jurisdiction where the case arose, a city has a right to be indemnified by a landowner in the event it is compelled to pay damages resulting from a dangerous condition he created or maintained and for which he would be liable to pedestrians. In this regard it may be noted that a number of jurisdictions which adhere to the view that the city and the landowner are joint or concurrent tort feasors make an exception to the general rule against contribution between joint wrongdoers and hold that a municipality has a right to be indemnified by the property owner in such a situation. (*Chicago* v. *Robbins*, 67 U.S. 418,

422-423, 425 [17 L.Ed. 298, 302-303]; *Washington Gaslight Co.* v. *District of Columbia*, 161 U.S. 316 [16 S.Ct. 564, 568, 40 L.Ed. 712]; *Salt Lake City* v. *Schubach*, 108 Utah 266 [159 P.2d 149, 157-158, 160 A.L.R. 809, 821-822]; *City of Tuscaloosa* v. *Fair*, 232 Ala. 129 [167 So. 276, 279]; *Gulf, Mobile & Ohio R. Co.* v. *Arthur Dixon Transfer Co.*, 343 Ill. App. 148 [98 N.E.2d 783, 785]; 19 McQuillin, Municipal Corporations [1950], § 54.19, pp. 91-94; Prosser on Torts [1941], p. 1116; 1 Freeman on Judgments [5th ed.], § 477, p. 980.)'' (41 Cal.2d 419, 430.)

In *Washington Gaslight Co.* v. *District of Columbia*, 161 U.S. 316, 325, 327, 328 [16 S.Ct. 564, 40 L.Ed. 712], the district had given the gas company permission, for which it was paid a dollar, to open the sidewalk to install a gas box which contained a cock in the service pipe. The box had an iron cover which when locked in place was flush with the surface of the sidewalk. After the installation of the box, the district caused the sidewalk to be widened so that the box was approximately in the center thereof. The gas box was left open by the company and a pedestrian fell as a result thereof and was injured. She brought suit against the district and recovered a judgment for such damages. The district thereafter brought an action for indemnity against the gas company to recover the damages it had been forced to pay. The Supreme Court of the United States, in affirming a judgment for the plaintiff district against the gas company, held: ''It would be unreasonable to infer that Congress, when it authorized the use of the streets or sidewalks for the purposes of the Gas Company's business, contemplated that the city of Washington or its successor, the District of Columbia, should keep in repair such apparatus, the continued location of which in the sidewalks of the city was permitted, not only as an incident to the right to make and sell gas, but also for the pecuniary benefit of the Gas Company. We conclude, therefore, that the duty was imposed upon the Gas Company to supervise and keep the gas box in repair. This duty not only does not conflict with the charter of the company, but on the contrary is sanctioned by its tenor, and is imposed as an inevitable accessory of the powers which the charter confers. . . .

''*Second. Had the District a cause of action against the Gas Company resulting from the fact that it had been condemned to pay damages occasioned by the defective gas box, which it was the duty of the Gas Company to supervise and repair?*

"An affirmative answer to this proposition is rendered necessary by both principle and authority. This court said in *Chicago* v. *Robbins,* 2 Black [U.S.], 418, 422 [17 L.Ed. 298] : 'It is well settled that a municipal corporation having the exclusive care and control of the streets, is obliged to see that they are kept safe for the passage of persons and property, and to abate all nuisances that might prove dangerous; and if this plain duty is neglected, and any one is injured, it is liable for the damages sustained. The corporation has, however, a remedy over against the party that is in fault, and has so used the streets as to produce the injury, unless it was also a wrongdoer.' And the same doctrine is reiterated in almost the identical language in *Robbins* v. *Chicago,* 4 Wall. [U.S.] 657, 670 [18 L.Ed. 427].

"The principle thus announced qualifies and restrains within just limits the rigor of the rule which forbids recourse between wrongdoers. In the leading case of *Lowell* v. *Boston & Lowell Railroad* [40 Mass.] 23 Pick. 24, 32 [34 Am.Dec. 33], the doctrine was thus stated: 'Our law, however, does not in every case disallow an action, by one wrongdoer against another, to recover damages incurred in consequence of their joint offense. The rule is, *in pari delicto potior est conditio defendentis*. If the parties are not equally criminal, the principal delinquent may be held responsible to his co-delinquent for damages incurred by their joint offence. In respect to offences, in which is involved any moral delinquency or turpitude, all parties are deemed equally guilty, and courts will not inquire into their relative guilt. But where the offence is merely *malum prohibitum*, and is in no respect immoral, it is not against the policy of the law to inquire into the relative delinquency of the parties, and to administer justice between them, although both parties are wrongdoers.' " (161 U.S., pp. 325, 327, 328.) In the "Statement of the Case" (pp. 318, 319) it was noted that it was the district's duty to inspect, at the first of each month, the various gas boxes in the sidewalks.

Cases from other jurisdictions also draw a distinction between "active" and "passive" negligence in holding that the municipality is entitled to indemnity from the landowner using the public ways for his own personal benefit and thereby causing injury to a member of the public entitled to use the sidewalk or street in the customary way. (*City of Spokane* v. *Crane Co.*, 98 Wash. 49 [167 P. 63, 64] ; *Salt Lake City* v. *Schubach*, 108 Utah 266 [159 P.2d 149, 155].)

The following quotations demonstrate the city's position that in a situation such as we have in the case at bar, courts of other jurisdictions generally agree that the municipality has, or should have, a right of action over against the land-owner whose negligent use of the public ways has caused it to become liable in damages to a member of the general public. In 19 McQuillin, Municipal Corporations, third edition, section 54.19, pages 91-94, it is said: "Indeed, 'the right of a municipality to recover over against the party primarily liable for the negligence has been established so long that it is not now questioned,' the leading authority in support of this rule being a decision of the United States Supreme Court, which has been approved or followed in numerous cases." In 4 Dillon, Municipal Corporations, fifth edition, section 1728, page 3032, it is said: "If a *municipal corporation be held liable* for damages sustained in consequence of the unsafe condition of the sidewalks or streets, *it has a remedy over against the person by whose wrongful act or conduct the sidewalk or street was rendered unsafe*, unless the corporation was itself a wrong-doer, as between itself and the author of the nuisance. . . ." And in Prosser on Torts, second edition, page 250, it is noted that "Again, it is quite generally agreed that there may be indemnity in favor of one who was under only a secondary duty where another was primarily responsible, as where a municipal corporation, held liable for failure to keep its streets in safe condition, seeks recovery from the person who created the condition or a property owner who permitted it."

In *Monsch* v. *Pellissier*, 187 Cal. 790, 792, 793, 794 [204 P. 224], where plaintiff was injured because of the defective condition of a light-well in the sidewalk in front of defendant's property, the court said: "Inasmuch, therefore, as the light-wells, as such, were, as we have seen, constructed for the benefit of defendant and her property and for a use independent of and apart from the ordinary and accustomed use of the sidewalk, the law casts upon her the duty, to be discharged with reasonable care, of keeping it in proper and safe condition. . . .

"In other words, under the facts of this case, *the duty was, in the first instance*, independent of notice to or by the city, cast upon the defendant to repair the gratings." (Emphasis added.) (See also *Sexton* v. *Brooks*, 39 Cal.2d 153, 157 [245 P.2d 496]; *Granucci* v. *Claasen*, 204 Cal. 509 [269 P. 437, 59 A.L.R. 435].)

The city also contends that the municipality's right of action over against the landowner in such a situation should be allowed in the interests of equity and justice; that it is inequitable to hold the taxpayers liable for the negligent maintenance of a structure in the public sidewalk which inures only to the landowner's private benefit.

The city also argues that to hold the city liable in damages for such landowner's negligence constitutes a gift of public funds in violation of article IV, section 31, of the Constitution of California which provides, in part, that "The Legislature shall have no power to give or to lend . . . the credit of . . . any . . . city and county . . . in aid of or to any person . . . or to pledge the credit thereof, in any manner whatever, for the payment of the liabilities of any individual. . . ."

As a final argument the city contends that in the enactment of section 875 of the Code of Civil Procedure which became effective on January 1, 1958, the Legislature expressly recognized that there is a distinction in California between the right to indemnity and the right to contribution. Section 875, which provides for contribution between joint tortfeasors, sets forth in subdivision (f) that "This title shall not impair any right of indemnity under existing law, and where one tortfeasor judgment debtor is entitled to indemnity from another there shall be no right of contribution between them."

## The Defendants' Argument

Defendants contend that the Peters case laid down the rule that the city and the landowner are each liable for their separate wrongful acts; that they are joint and concurrent tort feasors; that there is no right to contribution among joint tortfeasors in California.*

Defendants rely on *Smith* v. *Fall River J. U. High School Dist.*, 1 Cal.2d 331, 334, 335 [34 P.2d 994]. In the Smith case, plaintiff was injured as the result of a collision between a school bus owned and operated by one Fitzwater in which she was a passenger and an automobile driven by one Pratt. Fitzwater had an agreement with the school district whereby it paid him so much per month to transport pupils, living within the district, by bus to school. Plaintiff sued the school district, Fitzwater, the driver of the bus, and Pratt, on ac-

---

*As heretofore noted, this rule was changed by the Legislature in 1957 by the addition of section 875 of the Code of Civil Procedure, effective January 1, 1958. The present action arose in 1952.

count of their concurring negligence as the cause of her injuries. She recovered judgment against all three defendants. All three defendants appealed, but only the district and Fitzwater gave a bond on appeal to stay execution. The Independence Indemnity Company was the surety on the bond. The judgment was affirmed and the Independent Indemnity Company paid plaintiff the full amount of the judgment. The satisfaction of judgment executed by the plaintiff was not filed until Pratt moved the court to compel its entry. The motion was granted by the trial court and the indemnity company appealed. At the time of the hearing of the motion, it appeared that prior to the accident Independence Indemnity Company had contracted in writing with the school district to insure it and Fitzwater against any such loss occasioned by the use of the school bus. The indemnity company contended that it was entitled to be subrogated to the rights of the plaintiff against all three defendants because of the stay bond given by it. The court held that if the "appellant's sole liability to the parties herein was that incurred under said stay bond, its position is undoubtedly correct." It was held that "As appellant cannot recover from either the district or Fitzwater by reason of its indemnity bond, can it recover against the respondent [Pratt] whose negligence concurred with that of Fitzwater in causing plaintiff's injuries? *It is well settled in this state that there is no right of contribution between joint tort-feasors whose concurrent negligence has made them jointly liable in damages.* (*Adams* v. *White Bus Line,* 184 Cal. 710 [195 P. 389].) Therefore, had either of the two defendants, the school district or Fitzwater, paid said judgment, no claim for contribution against the respondent could have been made by the defendant making said payment. Neither could the appellant, after paying the judgment as the indemnitor of the two defendants, the school district and Fitzwater, compel contribution or recover anything from the respondent, a joint tort-feasor with the other two defendants. This was the point involved and definitely settled in the case of *Adams* v. *White Bus Line, supra.*" (Emphasis added.) The court went on to hold that had the indemnity company had only the stay or appeal bond and had there been no indemnity insurance the holding in *La Fleur* v. *M. A. Burns Lumber Co.,* 188 Cal. 321 [205 P. 102], would have applied. In the La Fleur case the surety upon the appeal or stay bond paid the judgment and was held entitled under section 709 of the Code of Civil Procedure to be

subrogated to all the rights of the plaintiff in the action in which its principal had been defendant.

Defendants rely on *Dow* v. *Sunset Tel. & Tel. Co.*, 162 Cal. 136, 138, 139 [121 P. 379], in support of their position that the California courts do not draw a distinction between "passive" and "active" negligence. In the Dow case plaintiff was the employee of the Sunset Telephone and Telegraph Company. The facts showed that the telephone company had originally strung its wire too close to wires of the Oakland Gas, Light and Heat Company. The wires of the Oakland light company were improperly insulated and the contact between the installations of the two companies produced a dangerous supercharge of electricity. An employee of the Oakland company reported the danger to his superior but it took no steps either to correct the trouble or to warn the telephone company. Plaintiff was assured by his superior in the telephone company that the wire was not supercharged with electricity and while making an investigation of some trouble with the telephone wire was seriously injured as a result of an electric shock received from one of the telephone wires. He brought an action against both companies and recovered a judgment which was affirmed on appeal (*Dow* v. *Sunset Tel. & Tel. Co.*, 157 Cal. 182 [106 P. 587]). Plaintiff collected the entire judgment from the Oakland Gas, Light and Heat Company and thereafter it sought contribution from the telephone company. The court held: "Both companies were liable, but appellant insists that it was only passively guilty of a tort and that therefore it comes within an exception to the general rule above stated. With this view we cannot agree. It was the separate duty of each to take thorough precautions. Any accident due to neglect of such duty made the corporations jointly liable." The court in the Dow case cites *Forsythe* v. *Los Angeles Ry. Co.*, 149 Cal. 569, 573 [87 P. 24], and *Fowden* v. *Pacific Coast Steamship Co.*, 149 Cal. 151, 157 [86 P. 178], in support of its statement that there is no contribution between joint tort feasors. In all three of these cases contribution was sought by one joint tort feasor against the other. It is conceded that the rule in California has always been that there can be no enforced contribution between joint tort feasors. In the case at bar, however, the city seeks indemnity from defendants because of the special licensor-licensee relationship existing between them with respect to the use of the public ways.

Defendants contend that the Public Liability Act of 1923 (Gov. Code, §§ 53050, 53051) "evidenced a strong public policy in favor of placing financial responsibility on a City for failure to keep its public ways in safe condition"; that if the city is entitled to indemnity from the property owner it will exonerate the city from all responsibility for its own neglect. ■ We held in the Peters case (41 Cal.2d 419, 429) that the city was directly liable to pedestrians for failing to correct a dangerous condition of which it had notice and "it is not relieved of its responsibility in this regard merely because the condition was created or maintained by a property owner who might also be liable to pedestrians for injuries resulting therefrom." ■ We also held that "Even if such a right to contribution or indemnity were recognized, however, it would not mean, as asserted by the city, that its liability to pedestrians is merely dependent or derivative from that of the landowner and not joint or direct." (Pp. 430, 431.)

■ We conclude that where an adjoining property owner for the exclusive benefit of his own property places in a public street or sidewalk some artificial structure and a city is compelled to pay compensation in damages to a member of the public injured thereby the city has a right to recover the amount so paid from the property owner by way of indemnity. In so holding, we do not depart from our holding in the Peters case quoted just above. We affirm our statement there that in holding that the city has a right over against the property owner we do not mean that the city's liability to the injured member of the public is merely dependent or derivative and not joint or direct.

The judgment is reversed.

Gibson, C. J., Shenk, J., Traynor, J., and Spence, J., concurred.

SCHAUER, J., Dissenting.—It is my view that inasmuch as the city was held liable to the injured pedestrian, Mrs. Wagner, because of its own failure to perform obligations owed directly to her, no recovery over should be permitted in the city's favor as against the abutting property owner. This conclusion is emphasized by the further fact that Mrs. Wagner would not have sustained her injury if the city had not neglected to perform the duty it owed to her. As hereinafter

shown the majority ruling creates a new right and enforces it retroactively.

By adoption of the Public Liability Act in 1923 (now Gov. Code, § 53051) the Legislature imposed upon municipalities liability to persons injured from the dangerous or defective condition of streets and sidewalks "if the legislative body, board, or person authorized to remedy the condition: (a) Had knowledge or notice of the defective or dangerous condition. (b) For a reasonable time after acquiring knowledge or receiving notice, failed to remedy the condition . . ." (Gov. Code, § 53051; see also *Fackrell* v. *City of San Diego* (1945), 26 Cal.2d 196, 203, 208 [9] [157 P.2d 625, 158 A.L.R. 773] ; *Ackers* v. *City of Los Angeles* (1940), 40 Cal.App.2d 50, 53 [104 P.2d 399] ; *Jones* v. *City of South San Francisco* (1950), 96 Cal.App.2d 427, 430-433 [216 P.2d 25].) The Streets and Highways Code provides in section 5610 that "The owners of lots . . . fronting on any portion of a public street . . . when that street . . . is improved . . ., shall maintain any sidewalk in such condition that the sidewalk will not endanger persons . . ." The same code in section 5611 directs that "When any portion of the sidewalk is out of repair . . . and in condition to endanger persons . . . in the use of such sidewalk, the superintendent of streets shall notify the owner or person in possession of the property fronting on that portion of such sidewalk so out of repair, to repair the sidewalk," and (§ 5615) "If the repair is not commenced and prosecuted to completion with due diligence, as required by the notice, the superintendent of streets shall forthwith repair the sidewalk." (See also, *Sexton* v. *Brooks* (1952), 39 Cal. 2d 153, 157-158 [245 P.2d 496] ; *Laurenzi* v. *Vranizan* (1945), 25 Cal.2d 806, 809-812 [155 P.2d 633] ; *Schaefer* v. *Lenahan* (1944), 63 Cal.App.2d 324, 326-327 [146 P.2d 929] ; *Barton* v. *Capitol Market* (1943), 57 Cal.App.2d 516, 517-518 [1] [134 P.2d 847].) It follows that by the judgment entered in favor of the pedestrian, Mrs. Wagner, and against the city it became established as a matter of law that the city had knowledge or notice of the dangerous and defective sidewalk condition and permitted such condition to continue to exist beyond a reasonable time and until she was injured thereby. (See *Arellano* v. *City of Burbank* (1939), 13 Cal. 2d 248, 254 [1] [89 P.2d 113].)

This court has specifically declared that "The duty of the landowner is to use due care not to create or maintain a dangerous condition for the benefit of his property, while

that of the city is to use due care to discover and remove defective conditions. [Citations.] Thus, the liability of each type of defendant is based upon his individual wrongful act or omission, and it is possible to have a valid verdict, exonerating one and holding the other. [Citations.] . . .'' (*Peters* v. *City & County of San Francisco* (1953), 41 Cal.2d 419, 428-429 [14] [260 P.2d 55].

In the Peters case the city argued that the judgment against it should be reversed because there was no judgment against the landowner, but we there stated that ''We do not agree. The city is under a duty to keep sidewalks in safe condition, it is directly liable to pedestrians for failing to correct a dangerous condition of which it had notice, and it is not relieved of its responsibility in this regard merely because the condition was created or maintained by a property owner who might also be liable to pedestrians for injuries resulting therefrom. [Citations.] With regard to persons who are injured by such a condition, the city and the landowner are joint or concurrent tort feasors; each is directly liable for his own wrong and each may be held liable for the entire damage suffered. [Citations.]'' (*Peters* v. *City & County of San Francisco* (1953), *supra,* 41 Cal.2d 419, 429 [14, 15, 16]; see also, *Douglass* v. *City of Los Angeles* (1935), 5 Cal. 2d 123, 128 [2] [53 P.2d 353]; *Bosqui* v. *City of San Bernardino* (1935), 2 Cal.2d 747, 764 [9] [43 P.2d 547]; *Marsh* v. *City of Sacramento* (1954), 127 Cal.App.2d 721, 723-725 [1] [274 P.2d 434]; *Wilkes* v. *City & County of San Francisco* (1941), 44 Cal.App.2d 393, 397 [5] [112 P.2d 759]; *Mulder* v. *City of Los Angeles* (1930), 110 Cal.App. 663, 668 [294 P. 485].) Thus, it is not for any act or neglect of the property owner that the city is liable; it is liable, if at all, not on and such theory as that of *respondeat superior,* but rather, solely for the breach of its own duty. And, perhaps more important, it must be recognized that the *acts of both original defendants* (the property owners and the city) were necessary to produce the injury to the pedestrian, Mrs. Wagner. If *either the property owner or the city* had discharged the duty respectively imposed on them the accident would not have happened.

Under these circumstances it appears to me that to require the landowner not merely to answer for his own negligence but also to indemnify the city for its independent tort will tend to defeat the Legislature's purpose in making the city liable for its own negligence in failing to vigilantly inspect

and diligently maintain, or require owners of abutting property to maintain, sidewalks in a safe condition. If such a right is created and enforced by this court, a most natural result will be encouragement of laxity on the part of the city in carrying out its obligation of inspection, discovery of patent defects, and proper maintenance of sidewalks for the safety of the public. The proposal of the city that it should be indemnified by the property owner for what it terms its own "passive" negligence in permitting a dangerous condition to continue should be promptly and positively rejected.

This matter obviously presents no such case as *San Francisco Unified Sch. Dist.* v. *California Bldg. etc. Co.* (1958), 162 Cal.App.2d 434, 443 [5] [328 P.2d 785], wherein the court expressly recognized the rule that there is no right of contribution among joint tort feasors but properly held that in the circumstances of that case the rule was inapplicable because of the contractual relations of the parties. "The contract . . . provided that the [defendant] . . . *'is held responsible for payment of any and all damages' resulting from its operations.* [Italics added.] Even if this did not amount to an express contract to indemnify the school district for damages caused to it by a breach of the contract by the [defendant] . . ., such a warranty or agreement to indemnify would necessarily be implied. Whether the school district [plaintiff] should be precluded from recovery by reason of its conduct, that is, whether the conduct of the district helped to bring about the damage, is at least a question of fact and should have been left to the jury. Under such circumstances it was error to grant a nonsuit." (Pp. 448-449 of 162 Cal. App.2d.)

The case before us not only does not show any agreement by the property owners to indemnify the city for the breach of its duty but makes clear, as a matter of law, the fact that "the conduct of the [city] helped to bring about the damage." The case at bar, therefore, is fundamentally indistinguishable from, and should be governed by, *Dow* v. *Sunset Tel. & Tel. Co.* (1912), 162 Cal. 136, 138-140 [121 P. 379], and cases there cited. (See also 23 So.Cal.L.Rev. 413.) In this case, as in Dow, the independent negligence of both tort feasors was necessary to cause the pedestrian's injury. From the fact that the judgment in the basic personal injury action was entered in favor of the plaintiff therein and has become final as against both the city and the property owners, it follows

as a matter of law (implicit in the determination adverse to the respective defendants in such basic action) that the subject injury would not have occurred if either (a) the property owner had not created the condition or (b) the city had not permitted the condition to continue after it had notice and was bound to correct it. Thus the right of the city to claim indemnification for the consequences ensuing from its own tort is a new right of recovery, not heretofore known to the law of this state, and it is enforced retroactively by the same decision which creates it. Such rulings should not find favor with the court.

I would affirm the judgment denying recovery to the city.

McComb, J., concurred.